U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

MAY 14 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Prudhomme, et al                                   Civil Action No. 15-00098

versus                                             Judge Richard T. Haik, Sr.

Geico Insurance Co., et al                         Magistrate Judge C. Michael Hill

## MEMORANDUM ORDER

Before the Court is a Motion To Dismiss First Supplemental And Amending Petition For Property Damages, Penalties, Attorneys Fees And For Class Certification filed by Defendants, GEICO Casualty Insurance Company ("Geico Casualty") and Government Employees Insurance Company ("Government Employees") (collectively known as "GEICO"), [Rec. Doc. 29] and an Opposition Memorandum filed by Plaintiffs, Eric Prudhomme ("Prudhomme") and Elvin Jack ("Jack"), individually and on behalf of others similarly situated, [Rec. Doc. 31]. Oral argument is not necessary. For the reasons that follow, GEICO's Motion will be denied.

*I. Background*

Plaintiff Prudhomme was involved in an automobile accident in Lafayette Parish, Louisiana on or about February 14, 2013. At that time, Prudhomme's vehicle, a 2008 Kia Rondo LX, was covered under an insurance policy issued to Prudhomme by Government Employees. Prudhomme made a claim against the collision coverage of his policy to recover for the damage to his vehicle. In evaluating his claim Government Employees used a system known as CCC Valuescope Value ("CCC Valuescope") which Prudhomme valued the

vehicle at approximately $8,885.00. Prudhomme contends the NADA Valuation Reports for his vehicle described its value as approximately $10,150.00. Government Employees refused to negotiate on the difference between the two values and tendered the amount of approximately $8,885.00 to Prudhomme.

Plaintiff Jack was involved in an automobile accident on or about March 4, 2014. Jack's vehicle, a 2000 Ford Ranger V-6 Supercab truck, was insured by Geico Casualty. Jack made a claim against Geico Casualty under the collision provision of the policy. Geico Casualty determined the vehicle to be a total loss. While Jack contends the NADA Valuation Report for his vehicle described its value as approximately $4,475.00, using the CCC Valuescope, Geico Casualty found the value of Jack's vehicle to be approximately $2,483.00, and tendered this amount to him.

In their First Supplemental and Amending Petition, filed as a purported class action in the Fifteenth Judicial District Court, Lafayette Parish, on December 2, 2014, Plaintiffs allege that the CCC Valuescope results in unfairly low valuations of vehicles, and that although GEICO is aware of this fact, it refuses to use the NADA and/or the Kelly Blue Book values which are "the generally accepted valuation tools." *R. 20.* Plaintiffs further allege that GEICO knew or should have known that the NADA and/or Kelly Blue Book values are "the generally accepted valuation tools" used by individuals selling their vehicles and automobile dealerships so that, as a practical matter, with the amounts tendered by GEICO, the insured's vehicle cannot be replaced. *Id. at ¶¶ 19, 20.* Plaintiffs therefore allege

that GEICO uses the CCC Valuescope "to intentionally undervalue total loss vehicles through the use of obscure 'adjustments' which systematically reduce values derived from comparables."

Plaintiffs allege, under the collision provisions of their policies with GEICO, GEICO was obligated to pay for the "loss" of their vehicles. *Id. at ¶ 22.* They further allege, "the parties intended and the Louisiana statutory law demands that the 'loss' be considered the fair market retail value of the vehicle." *Id. at ¶ 23.* Thus, they allege GEICO owes them "the fair retail value of their vehicle(s) as their 'loss' and not the lower value determined by its valuation system." *Id. at ¶ 29.* Plaintiffs allege they attempted to collect the difference between what GEICO paid and the actual amount of the "loss" but GEICO refused. *Id. at ¶ 26.* Accordingly, Plaintiffs allege that GEICO's action, refusal to pay the full amount of their "loss" under the terms and provisions of their policies, constitutes a breach of the terms and conditions of their insurance contracts.

Plaintiffs also allege that "GEICO's refusal to pay the difference in value is arbitrary, capricious and/or intentionally fraudulent" and that more than sixty days have passed since Plaintiffs' made demands for the difference, in violation of La. R.S. 22:1973(A)( and (B)(5). *Id. at ¶¶ 29, 33, 34.*

Additionally, Plaintiffs allege that GEICO's use of the CCC Valuescope violates La. R.S. 22:1892 (B)(5)(a), because the CCC Valuescope is not a "fair market value survey" and La. R.S. 22:1892(B)(5)(b) because it is not a "generally recognized used motor vehicle

3

industry source."[1] *Id. at ¶¶ 30, 31, 32.*

After the case was removed to this Court, GEICO filed this Motion to Dismiss asserting that Plaintiffs lack standing to proceed against the entities with which they have no contractual or legal arrangement, failed to sufficiently allege a violation of La. R.S. 22:1892(B)(5), which is fatal to their claims under La. R.S. 22:1973(B)(5), breach of contract and fraud, failed to plead fraud with sufficient particularity as required by Rule 9(b), and Prudhomme's La. R.S. 1973 (B)(5) claim has prescribed.

## II. Legal Standard

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007). A 12(b)(6) motion is "viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011). Dismissal is appropriate only if the complaint fails to plead "enough

---

[1] LSA-R.S. 22:1892 provides in pertinent part:

(5) When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall be derived by using one of the following:

(a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources. If there are no dealers in the local market area, the nearest reasonable market can be used.

(b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public. If the insured demonstrates, by presenting two independent appraisals, based on measurable and discernable factors, including the vehicle's preloss condition, that the vehicle would have a higher cash value in the local market area than the value reflected in the source's database or the guidebook, the local market value shall be used in determining the actual cash value.

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir.2011). Yet, it must allege enough facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

On the other hand, with respect to fraud claims, Federal rule of Civil Procedure 9(h) requires the plaintiff to "state with particularity the circumstances constituting the fraud." *Shandong Yinguang Chemical Industries Joint Stock co., Ltd v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) *quoting* Fed. R. Civ. P. 9(h). What constitutes 'particularity' will necessarily differ with the facts of each case...." *Benchmark Electronic, Inc. V. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong*, 607 F.3d at 1032.

*III. Law And Analysis*

Considering the above allegations, Plaintiffs assert claims for breach of their insurance contract, statutory penalties and attorney's fees, and fraud. GEICO argues that Plaintiffs' Complaint must be dismissed because they: (1) have no standing to bring these claims against GEICO; (2) have not alleged a plausible claim for a statutory violation, breach of contract and/or fraud; (3) cannot pursue a claim under the Louisiana Unfair Trade

Practices Act ("LUTPA")[2]; and (4) Prudhomme's claims for penalties and attorney's fees are prescribed. The Court addresses these issues as follows.

A. *Standing*

GEICO initially argues that Plaintiffs lack standing to proceed "against companies that they have no contractual relationship with: (1) Jack against Government employees; and (2) Prudhomme against Geico Casualty." *R. 29.* While GEICO has enrolled in this action in defense of both Government Employees and Geico, it now alleges neither plaintiff purchased any GEICO policy.[3] GEICO provides no indication that the company is not a proper-party defendant. According to www.geico.com, "GEICO stands for Government Employees Insurance Company" and Bloomberg.com indicates that Geico Casualty is a subsidiary of GEICO. The Court declines to find that Plaintiffs have no standing.

B. *Statutory, Breach of Contract and Fraud Claims*

GEICO further asserts that Plaintiffs allegations are insufficient under *Iqbal* and *Twombly* to demonstrate that CCC Valuescope does not comply with La. R.S. 22:1892(B)(5) because it is not a "fair market value survey." Plaintiffs allege that GEICO breached its contractual obligations under their individual policies through its use of the CCC Valuescope "to intentionally undervalue total loss vehicles through the use of obscure 'adjustments' which systematically reduce values derived from comparables." *R. 20, ¶ 18.*

---

[2] As Plaintiffs represent they do not attempt to bring a class LUTPA claim for unfair and deceptive trade practices, *R. 31, F.N. 2*, the Court will not address this issue.

[3] Noting that it previously raised this issue, GEICO cites the Court to a Withdrawn pleading, Record Document 14. *R. 14, 21, 23.*

As provided in the foregoing, La. R.S. 22:1892(b)(5)(b) requires insurers who adjust "first party motor vehicle total losses on the basis of actual cash value or replacement" to use a "generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public." La. R.S. 22:1892(B)(5)(b). Plaintiffs allege that under the collision provisions of the policies, "GEICO was obligated to pay for the 'loss' of their vehicles", and they "intended and Louisiana statutory law demands that the 'loss' be considered the fair market retail value of the vehicle." *R. 20, ¶¶ 22, 23*. Although they submitted claims to GEICO for the "loss" of their vehicles, they allege GEICO paid only a portion of the "loss" and refused to negotiate with Plaintiffs on the difference, and therefore, these actions constitute a breach of their insurance contracts. *Id. at ¶¶ 24- 27*.

In addition to alleging that GEICO breached its contractual obligations under the policy through the use of the CCC Valuescope, Plaintiffs also allege that the use of the CCC Valuescope violates Louisiana statutory law, La. R.S. 1892(B)(5)(b) because it "is not a 'generally recognized used motor vehicle industry source' within the intendment of [the statute]." *Id. at ¶ 31*. Plaintiffs further allege that the CCC Valuescope is not a "fair market value survey" as authorized under La. R.S. 22:1892(5)(a) because it is marketed exclusively to insurance companies as "a tool employed for the specific purpose of undervaluing claims and thereby cheating its policy holders." *Id. at ¶ 32*.

Under Louisiana law, policy provisions which conflict with statutes or public policy

7

are unenforceable. "If a conflict exists between the policy provisions and statutory requirements, the latter will prevail." *See Trevino v. Prudential Ins. Co.*, 504 So.2d 1179, 1181–82 (La. App. 3rd Cir. 1987). Plaintiffs allege that the NADA and Kelly Blue Book are "the widely accepted valuation tools" and that the CCC Valuescope Reports are neither "fair market value survey" nor a "generally recognized used motor vehicle industry source" as required under La. R.S. 22:1893(B)(5).

Accepting all well-pleaded facts as true, including the allegations cited above, viewing them in the light most favorable to the Plaintiffs, the Court finds that the allegations made against GEICO meet the plausibility standard in *Twombly* in that the Complaint on is face contains enough factual matter taken as true to raise a reasonable hope or expectation that discovery will reveal evidence of each element of Plaintiffs' claims for breach of contract and fraud. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

C. *Statutory Penalties and Attorney's Fees*

Plaintiffs allege that GEICO violated its duty to adjust claims promptly and fairly, pursuant to La. R.S. 22:1973(A). They allege that GEICO's refusal to timely pay the difference between the value determined by GEICO utilizing the CCC Valuescope and the vehicle value determined by Plaintiffs utilizing the NADA or Kelly Blue Book was arbitrary and capricious. Plaintiffs request penalties and attorney's fees pursuant to section (B)(5) in that more than 60 days have passed since they submitted satisfactory proof of loss to GEICO but to date, they have not paid the full amount due under the terms of their policies.

La. R.S. 22:1973 provides:

(A) An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

* * *

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure it arbitrary, capricious, or without probable cause."

La. R.S. § 22:1973(A), (B)(5). "La. R.S. § 22:1973 imposes an additional duty of good faith and fair dealing on insurers, this duty does not exist 'separate and apart' from an insurer's contractual obligations. The duty of good faith is intimately related to [the insurer's] contractual obligations, as the statute essentially imposes a duty on the insurer to perform its contractual obligations in good faith. In the absence of a contractual duty, the duty of good faith simply does not exist." *Arceneaux v. State Farm Fire & Cas. Co.*, 2009 WL 959948, 3 (E.D.La.,2009).

As Plaintiffs have plead a viable breach of contract claim, they have a viable claim for statutory penalties and attorney's fees. In particular, they have alleged claims under sections (A) and (B)(5) for GEICO's alleged arbitrary and capricious refusal to timely pay the difference between the vehicle value determined by GEICO utilizing the CCC Valuescope and the value determined by plaintiff utilizing the NADA or Kelly Blue Book.

D. *Whether Prudhomme's Bad Faith Claim Has Prescribed*

9

Defendants contend that Prudhomme's bad faith claim under 22:1973 has prescribed because Prudhomme filed this action on December 2, 2014, more than one year from the date of his February 14, 2013 loss. Defendants argue that the one-year prescriptive period of tort claims, La. C.C. art. 3492, applies to this claim. Plaintiffs respond that the ten-year prescriptive period for contractual claims set forth in La. C.C. art. 3499 should be applied. Alternatively, Plaintiffs argue in the event the Court finds the one-year prescriptive period applies, the jurisprudential doctrine of *contra non valentem* prevents the running of prescription in this case.

La. R.S. 22:1973 does not include a provision establishing a prescriptive period for asserting bad faith claims arising under that statute. In support of their contention that the appropriate prescriptive period is the one-year period for delictual claims, Defendants cite *Zidan v. USAA Prop. & Cas. Co.*, 622 So.2d 265, 266 (La.App. 1 Cir.1993) and a line of cases following *Zidan*. Defendants note however, in *Aspen Specialty Ins. Co. v. Technical Industries, Inc.*, 2015 WL 339598, 2 (W.D.La.,2015), Magistrate Judge Hanna recently held that a ten-year prescriptive period applies to Section 1973 claims. The Court agrees with the Judge Hanna's reasoning in *Technical Industries*.

"The proper prescriptive period to be applied in any action depends upon the nature of the cause of action." *Roger v. Dufrene*, 613 So.2d 947, 948 (La.1993). *Zidan* involved a claim by a third-party to an insurance contract against an insurer. The *Zidan* court held that such a claim would be classified as a tort and subject to the one-year prescriptive period for

delictual actions. This case, like *Technical Industries*, however, involves a claim by an insured against its insurer and is therefore a contract claim. Such a claim is classified under Louisiana law as a personal action subject to a liberative prescription of ten years. *Dufrene*, 613 at 948.

Accordingly, for the reasons set out above,

**IT IS ORDERED** that the Motion To Dismiss [Plaintiffs'] First Supplemental And Amending Petition for Property Damages, Penalties, Attorneys Fees And For Class Certification filed by Defendants [Rec. Doc. 29] is **DENIED**.

**THUS DONE AND SIGNED** this 13th day of May, 2015 at Lafayette, Louisiana.

Richard T. Haik, Sr.
United States District Judge