**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | |
|---|---|
| **ERIC PRUDHOMME,** *et al.*, **Individually and on behalf of others similarly situated** | **CASE NO: 6:15-cv-00098** |
| | **JUDGE ROBERT G. JAMES** |
| vs. | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |
| **GEICO CASUALTY INSURANCE CO.,** *et al.* | |

_____

SECOND SUPPLEMENTAL AND AMENDING PETITION FOR PROPERTY DAMAGES, PENALTIES, ATTORNEY'S FEES AND FOR CLASS CERTIFICATION

NOW COME PLAINTIFFS, ERIC PRUDHOMME AND ELVIN JACK, Individually and on behalf of others similarly situated, who pursuant to Fed. R. Civ. P. 15, wish to supplement and amend the original and first supplemental and amending, as follows:

1.

Made defendants herein are the following, to-wit:

a) GEICO GENERAL INSURANCE COMPANY, a foreign insurance company licensed and doing business in the State of Louisiana.

b) GOVERNMENT EMPLOYEES INSURANCE COMPANY, a foreign insurance company licensed and doing business in the State of Louisiana.

2.

Defendants (sometimes collectively referred to as "Geico") are truly indebted to the petitioners in an amount commensurate with the damages sustained for the following, to-wit:

1

## JURISDICTION AND VENUE

3.

Venue is proper in this judicial district.

4.

Named petitioners and potential class members were policyholders of Government Employees Insurance Company and GEICO General Insurance Company which are authorized to do and doing business in Louisiana and which issue automobile insurance policies in Lafayette Parish, Louisiana.

5.

As hereinafter more fully appears, the defendants breached its contractual obligations under the policies issued in the State of Louisiana.

6.

The issues raised herein arise out of defendants' contractual relations created and issued within the State of Louisiana.

## BASIS FOR CLAIMS

7.

On or about February 14, 2013, Petitioner, ERIC PRUDHOMME, was involved in an automobile accident in Lafayette Parish, Louisiana.

8.

Mr. Prudhomme's vehicle, a 2008 Kia Rondo LX, was severely damaged in the accident so that the estimates to repair the vehicle rendered it a total loss. Petitioner made a claim against

the collision coverage of his automobile policy with Government Employees Insurance Company.

9.

NADA Valuation Reports for Petitioner's vehicle described its value as approximately $10,150.00.

10.

Government Employees Insurance Company refused to honor the afore described evaluation and instead used their own system described as "CCC Valuescope Value". The valuation under this report was approximately $8,885.00.

11.

Government Employees Insurance Company refused to negotiate in good faith on the difference between the CCC Valuescope Value Report and the NADA values. Government Employees Insurance Company tendered the amount of approximately $8,885.00 to the petitioner.

12.

Elvin Jack's vehicle was involved in an automobile accident on or about March 4, 2014.

13.

Mr. Jack's vehicle, a 2000 Ford Ranger V-6 Supercab truck, was severely damaged in the accident so that the estimates to repair the vehicle rendered it a total loss. Petition made a claim against the collision coverage of his automobile policy with GEICO General Insurance Company.

14.

NADA Valuation Reports for Petitioner's vehicle described its value as approximately $4,475.00.

15.

GEICO General Insurance Company refused to honor the afore described evaluation and instead used their own system described as "CCC Valuescope Value." The valuation under this report was approximately $2,483.00.

16.

GEICO General Insurance Company refused to negotiate in good faith on the difference between the CCC Valuescope Value Report and the NADA values. GIECO General Insurance Company tendered the amount of approximately $2,483.00.

**BREACH OF CONTRACT AND BAD FAITH**

17.

Petitioners represent that the CCC Valuescope Value Report used by Geico is unfairly low in its evaluations of vehicle values and that Geico is aware of this fact.

18.

Petitioners represent the CCC Valuescope Value Report is used by Geico to intentionally undervalue total loss vehicles through the use of obscure "adjustments" which systematically reduce values derived from comparables.

19.

Petitioners represent that separate and apart from the CCC Valuescope Value Report, Geico knew or should have known that other valuation systems such as NADA book values or Kelly Blue Book values are the generally accepted valuation tools. These are used by individuals selling their vehicles, automobile dealerships and the like so that as a practical matter, petitioners' vehicles cannot be replaced for the lower amount tendered by Geico and moreover, the CCC Valuescope Value does not represent either the actual cash value of the vehicle or the fair market retail value of the vehicle.

20.

Geico's use of the CCC Valuescope Value Report and its refusal to accept or pay the actual value of the vehicle as determined not only by the NADA Book value, Kelly Blue Book value, but the retail value generally accepted in the industry is a breach of the terms and conditions of its policy with the plaintiffs and other similarly situated policy holders.

21.

The aforementioned is a violation of Geico's duty to adjust claims fairly under the requirement of LSA-R.S. 22:1892 (formerly R.S. 22:658) and/or LSA-R.S. 22:1973 (formerly R.S. 22:1220) and it is therefore liable for penalties and attorney's fees.

22.

On information and belief, under the collision provisions of the petitioners' policies with Geico, Geico was obligated to pay for the "loss" of their vehicles.

23.

The parties intended and Louisiana statutory law demands that the "loss" be considered the fair market retail value of the vehicle.

24.

Petitioners submitted claims to Geico for the "loss" of their vehicles.

25.

Geico paid only a portion of the "loss" and refused to negotiate with plaintiffs on the difference.

26.

Petitioners attempted to collect the difference between what Geico paid and the actual amount of the "loss" but Geico refused.

27.

Petitioners allege that Geico's refusal to pay the full amount of the "loss" under the terms and provisions of the insurance policy with Geico, is a breach of the contract between Geico and the petitioners.

28.

On information and belief, Geico has breached its contractual obligations to the petitioners and others similarly situated, through its use of a vehicle valuation system which intentionally undervalues the "loss."

29.

Geico owes petitioners and others similarly situated, the fair retail value of their vehicles as their "loss" and not the lower value determined by its valuation system and Geico's refusal to pay the difference in value is arbitrary, capricious and/or intentionally fraudulent.

30.

Geico's use of the CCC Valuescope Value Report violates Louisiana law and specifically, LSA-R.S. 1892 (B)(5)(b) in that the CCC Valuescope Value Report is not a "generally recognized used motor vehicle industry source" but instead a tool employed for the specific purpose of undervaluing claims and thereby cheating its policy holders.

31.

Petitioners specifically allege that the CCC Valuescope Value Report is not a "generally recognized used motor vehicle industry source" within the intendment of R.S. 22:1892 (B)(5)(b). CCC Valuescope Values are not used by any person or entity in the used vehicle industry. It is marketed exclusively to insurance companies with the intent of providing increased profits to its insurance company customers by undervaluing total loss vehicle claims.

32.

Petitioners further allege that the CCC Valuescope Value Report is not a "fair market value survey" as authorized under LSA-R.S. 22:1892B(5)(a).

33.

Petitioners specifically allege that Geico has violated statutorily imposed duty under LSA-R.S. 22:1973A which requires an insurer to adjust claims promptly and fairly and to make a reasonable effort to settle claims within its insured.

34.

Petitioners specifically allege Geico has violated LSA-R.S. 22:1973(B)(5) in that more than 60 days have passed since petitioners submitted satisfactory proof of loss to Geico but to date, they have not paid the full amount due under the terms of the insurance contract.

35.

On information and belief, Geico employs the use of the CCC Valuescope Value Report knowing that it will undervalue the "loss" of its policyholders' vehicles and further, that it knew this information at the time it entered into contract with the petitioners and others similarly situated.

36.

On information and belief, Geico misled its policyholders, including the petitioners, into believing they would pay the full amount of any "loss" to a totaled insured vehicle (the fair market retail value and/or actual cash value).

37.

On information and belief, Geico employs a system which specifically misleads their insureds, intentionally undervalues their claims, intentionally refuses to negotiate all of which constitute fraud and unfair trade practices.

38.

Petitioners allege that to the extent that Geico's insurance policy conflicts with Louisiana State Law it should be deemed amended to conform and comply with the law.

## DAMAGES

39.

Defendants are liable to petitioners individually and on behalf of others similarly situated for all damages including but not limited to:

a) The difference between the amount tendered by Geico and the fair market value of the vehicle;

b) Penalties;

c) Attorney's fees;

## CLASS ACTION

40.

Petitioners pray that this matter be certified and maintained as a class action on behalf of all past and present Geico policyholders who have made claims against their policy for the total loss of a vehicle and had those claims undervalued through the use of the CCC Valuescope Value Report system and/or other unfair valuation tools used by Geico.

41.

Petitioners represent that the class consists of numerous policyholders who are located throughout the State of Louisiana and the United States, so that joinder of all members is impractical.

42.

Petitioners represent that the questions of law and fact are common to the class which include the following, to-wit:

i. Is CCC Valuescope Value Report a "generally recognized used motor vehicle industry source" or a "fair market value survey" required under Louisiana State Law?

ii. Does defendants' use of the CCC Valuescope Value Report system constitute bad faith and/or breach of contract?

43.

Petitioners represent that the claims and defenses of the representative parties is typical of the claims or defenses of the class.

44.

Petitioners represent that while the injury/damage may vary, the measure of injury is uniform, i.e., the difference between the value determined under the CCC Valuescope Value Report system and the actual value as determined under a legal system via NADA, Kelley Blue Book or another generally recognized used motor vehicle industry source.

45.

Petitioners represent that the damages can be determined on a class wide basis by using some of the data relied upon by CCC Valuescope Value Report in its computations (i.e. year, make, model and mileage of the vehicle) and using a legal source for the value of the vehicles such as NADA.

46.

Petitioners are members of the class they seek to represent, and their interests coincide with, and are not antagonistic to the other class members. Petitioners are a representative party and will fairly and adequately protect the interest of the class.

47.

Petitioners represent that the class is or may be defined objectively in the terms of ascertainable data such that the Court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

48.

Petitioners further represent that the prosecution of separate actions by or against individuals of the class would create a risk of inconsistent or varying adjudications with respect to individual members and would establish incompatible standards of conduct for the party opposing the class.

49.

Petitioners represent that the class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

WHEREFORE, petitioners, ERIC PRUDHOMME AND ELVIN JACK, individually and on behalf of others similarly situated, pray that defendants, GEICO GENERAL INSURANCE COMPANY and GOVERNMENT EMPLOYEES INSURANCE COMPANY, be served with a certified copy of this petition and be cited to appear and answer same, that after all legal delays and due proceedings had, there be judgment rendered herein in favor of petitioners and against

defendant for such damages as are reasonable in the premises, with legal interest from the date of judicial demand until paid, for all costs of these proceedings, for attorney's fees, and for all general and equitable relief allowed by law.

    RESPECTFULLY SUBMITTED,

    /s/ *J.R. Whaley*
    _____
    John Randall Whaley (#25930)
    3112 Valley Creek Drive, Ste D
    Baton Rouge, LA 70808
    Telephone: 225-302-8810
    Telecopier: 225-302-8814

    KENNETH D. ST. PÉ, APLC
    KENNETH D. ST. PÉ
    La. Bar Roll No. 22638
    311 W. University Ave., Suite A
    Lafayette, LA 70506
    (337) 534-4043

    THE MURRAY FIRM
    STEPHEN B. MURRAY, SR.
    La. Bar Roll No. 9858
    STEPHEN B. MURRAY, JR.
    La. Bar Roll No.23877
    ARTHUR M. MURRAY
    LA. Bar Roll No. 27694
    650 Poydras Street, Suite 2150
    New Orleans, LA 70130
    (504) 525-8100

    GEORE F. RIESS
    La. Bar Roll No. 11266
    228 St. Charles Ave., Suite 1224
    New Orleans, LA 70130
    (504) 568-1965

LAW OFFICES OF KENNETH W. DEJEAN
Kenneth W. DeJean
La. Bar Roll No. 04817
Post Office Box 4325
Lafayette, LA 70502-4325
Telephone: (337) 235-5294
Facsimile: (337) 235-1095
kwdejean@kwdejean.com
ATTORNEYS FOR PLAINTIFF
