# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE  DIVISION

Prudhomme, et al                                    Civil Action No. 15-00098

versus                                                   Judge Robert G. James

Geico Insurance Co., et al              Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Before the Court on referral from the district judge, is a Motion To Dismiss Elvin Jack's ("Jack") Second Supplemental And Amending Petition For Damages Or, Alternatively, Motion To Compel Appraisal filed by Defendant, GEICO General Insurance Company ("GEICO General") [Rec. Doc. 69], Jack's Opposition Memorandum  [Rec. Doc.72] and GEICO General's Reply thereto [Rec. Doc. 76]. The undersigned finds that oral argument is not necessary.  For the reasons that follow, the undersigned recommends that GEICO General's Motion be denied.

### I.  Background

Original Plaintiffs, Eric Prudhomme ("Prudhomme") and Tammy Romero ("Romero"), individually and on behalf of others similarly situated, filed this action as a purported class action in the Fifteenth Judicial District Court, Lafayette Parish, on December 2, 2014, against GEICO Casualty Insurance Company ("GEICO

1

Casualty")[1] and Government Employees Insurance Company ("Government Employees"). The case was removed to this Court on January 20, 2015. *R. 1.* After the case was removed, GEICO Casualty and Government Employees filed a Motion to Dismiss asserting that Plaintiffs lacked standing to proceed against GEICO as they have no contractual or legal arrangement, failed to sufficiently allege a violation of La. R.S. 22:1892(B)(5), as well as claims for breach of contract and fraud, failed to plead fraud as required by Rule 9(b), and that the La. R.S. 1973 (B)(5) claim was prescribed. *R. 14.* Plaintiffs filed a First Supplemental and Amending Petition ("First Amended Petition") on March 4, 2015, which deleted Plaintiff Romero and named Plaintiff Jack. The First Amended Petition also deleted Defendant Geico Insurance Company and named as Defendants Geico Casualty and Government Employees. *R. 20.* On May 14, 2015, the Court denied GEICO Casualty and Government Employees' motion to dismiss this action based on Plaintiffs' lack of standing, failure to sufficiently allege a violation of La. R.S. 22:1892(B)(5), breach of contract and fraud, failure to plead fraud with particularity under Rule 9(b) and prescription as to their 22:1973(B)(5) claim. *R. 33.* GEICO Casualty and Government Employees filed a Joint Motion To Adopt Class Certification Scheduling Order on July 17, 2015. *R.*

---

[1] In the January 20, 2015 Removal, GEICO Casualty corrected the record indicating that Plaintiffs incorrectly named "GEICO Insurance Company" rather than the correct defendant, "GEICO Casualty Insurance Company." *R. 1-4.*

*38; 39.* Thereafter, on September 20, 2016, Plaintiffs and GEICO Casualty and Government Employers filed a joint motion to vacate the Class Certification Scheduling Order based on the pending appeal to the Fifth Circuit of a case with similar facts and allegations, *Slade v. Progressive Security Insurance Company*, 6:11-cv-2164. The undersigned granted the motion on September 21, 2016. *R. 49.*

On June 26, 2017, GEICO Casualty and Government Employees filed a motion for partial summary judgment contending that GEICO Casualty did not issue an insurance policy to Plaintiff Jack. *R. 51.* Instead, they contended that GEICO General issued the policy covering Jack's vehicle at issue. *Id.* On July 17, 2017, Plaintiffs filed a motion to file a second supplemental and amending petition, *R. 55*, to which Defendants objected, *R. 62.* On October 16, 2017, the parties filed a motion to enter a Stipulation agreeing to allow Plaintiffs to file their second amended petition and dismiss GEICO Casualty without prejudice. *R. 65.* The parties further stipulated that Defendants would withdraw the motion for partial summary judgment without prejudice and the Court could terminate all related hearings.. *Id.* The Stipulation was entered into the record on October 12, 2017. *R. 66.* Plaintiffs' Second Supplemental and Amending Petition ("Second Amended Petition") was entered on October 13, 2017. *R. 67.* Both the First and Second Amended Petitions are identical with the exception of the correction of a few typographical errors and the substitution of

"GEICO Casualty Insurance Company" for "GEICO General Insurance Company." *R. 20, 69.*

Because GEICO General's motion to dismiss carves out Plaintiffs' allegations in the Second Amended Petition as to Jack only, the Court will address Plaintiffs' allegations in their Second Amended Petition as those of Jack's against GEICO General. Thus, the Court will refer to the allegations of "Jack" rather than "Plaintiffs" against "GEICO General" rather than "GEICO General and Government Employees" (referred to in the Second Amended Petition as "GEICO").

As to the personal claims, Jack alleges he was involved in an automobile accident on or about March 4, 2014. *R. 12.* Jack's vehicle, a 2000 Ford Ranger V-6 Supercab truck, was insured by Geico General. Jack made a claim against GEICO General under the collision provision of the policy. *R. 13.* GEICO General determined the vehicle to be a total loss. *Id.* While Jack contends the NADA Valuation Report for his vehicle described its value as approximately $4,475.00, GEICO General, using the CCC Valuescope, found the value of Jack's vehicle to be approximately $2,483.00, and tendered this amount to him. *R. 14; 15.*

In the Second Amended Petition, Jack alleges that the CCC Valuescope results in unfairly low valuations of vehicles, and that although GEICO General is aware of this fact, it refuses to use the NADA and/or the Kelly Blue Book values which are

"the generally accepted valuation tools." *Id.* Jack further alleges that GEICO General knew or should have known that the NADA and/or Kelly Blue Book values are "the generally accepted valuation tools" used by individuals selling their vehicles and automobile dealerships so that, as a practical matter, with the amounts tendered by GEICO General, the insured's vehicle cannot be replaced. *Id. at ¶¶ 19, 20.* Jack therefore alleges that GEICO General uses the CCC Valuescope "to intentionally undervalue total loss vehicles through the use of obscure 'adjustments' which systematically reduce values derived from comparables."

Jack alleges, under the collision provisions of their policies with GEICO General, GEICO General was obligated to pay for the "loss" of his vehicle. *Id. at ¶ 22.* He further alleges, "the parties intended and the Louisiana statutory law demands that the 'loss' be considered the fair market retail value of the vehicle." *Id. at ¶ 23.* Thus, he alleges GEICO General owes him "the fair retail value of [his] vehicle as [his] 'loss' and not the lower value determined by its valuation system." *Id. at ¶ 29.* Jack alleges he attempted to collect the difference between what GEICO General paid and the actual amount of the "loss," but GEICO General refused. *Id. at ¶ 26.* Accordingly, Jack alleges that GEICO General's action – refusal to pay the full amount of his "loss" under the terms and provisions of his Policy – constitutes a breach of the terms and conditions of his insurance contract.

Jack also alleges that "GEICO General's refusal to pay the difference in value is arbitrary, capricious and/or intentionally fraudulent" and that more than sixty days have passed since he made demands for the difference, in violation of La. R.S. 22:1973(A) and (B)(5). *Id. at ¶¶ 29, 33, 34.* Additionally, Jack alleges that GEICO General's use of the CCC Valuescope violates La. R.S. 22:1892 (B)(5)(a), because the CCC Valuescope is not a "fair market value survey" and La. R.S. 22:1892(B)(5)(b) because it is not a "generally recognized used motor vehicle industry source."[2] *Id. at ¶¶ 30, 31, 32.*

## II. Legal Standard

In considering a motion to dismiss under Federal Rule of Civil Procedure

---

[2] LSA-R.S. 22:1892 provides in pertinent part:

(5) When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall be derived by using one of the following:

(a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources. If there are no dealers in the local market area, the nearest reasonable market can be used.

(b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public. If the insured demonstrates, by presenting two independent appraisals, based on measurable and discernable factors, including the vehicle's preloss condition, that the vehicle would have a higher cash value in the local market area than the value reflected in the source's database or the guidebook, the local market value shall be used in determining the actual cash value.

6

12(b)(6), a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir.2007). A 12(b)(6) motion is "viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir.2011). Yet, it must allege enough facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

On the other hand, with respect to fraud claims, Rule 9(h) of the Federal Rules of Civil Procedure requires the plaintiff to "state with particularity the circumstances constituting the fraud." *Shandong Yinguang Chemical Industries Joint Stock co., Ltd v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) *quoting* Fed. R. Civ. P. 9(h). What constitutes 'particularity' will necessarily differ with the facts of each case . . . ." *Benchmark Electronic, Inc. V. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003).

"Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong*, 607 F.3d at 1032.

### III. Contentions of the Parties

In its motion, GEICO General asserts that Jack's claims against it should be dismissed because: (1) Jack has failed to adequately allege a breach of contract claim under the Policy and has failed to state a claim under La. R.S. 22:1892(B)(5), 22:1973(A),and/or fraud; (2) Jack has failed to plead fraud with particularity under Rule 9(h); (3) Jack's claim under La. R.S. 22:1973(B)(5) is prescribed; and (4) Jack's Second Amended Petition does not relate back to the filing of the First Amended Petition. Alternatively, GEICO General contends the Court should stay this action and compel Jack to comply with the "appraisal provision" in the Policy. *R. 67*.

Jack opposes GEICO General's motion arguing that the Court has previously addressed GEICO General's arguments. *R. 72, p.2, R. 33*[3]. Jack asserts he has adequately stated a breach of contract claim as well as causes of action under La. R.S. 22:1892 and La. R.S. 22:1973, and that he has stated the allegations of fraud with particularity. He denies that his claims are prescribed and asserts the claims should

---

[3] *See, Prudhomme v. Geico Ins. Co.*, 2015 WL 2345420 (W.D.La.,2015) (denying GEICO Casualty and Government Employees' motion to dismiss based on plaintiffs' lack of standing, failure to sufficiently allege a violation of La. R.S. 22:1892(B)(5), breach of contract and fraud, failure to plead fraud with particularity under Rule 9(b) and prescription as to their 22:1973(B)(5) claim.

be governed by Louisiana's 10 year breach of contract prescriptive period. Lastly, Jack asserts that appraisal is impossible as he no longer owns the vehicle and appraisal is irrelevant to the claims asserted.

## IV. Law and Analysis

GEICO General, as the insurer of Elvin Jack, argues that Jack's Second Supplemental and Amended Petition which specifically names GEICO General as the insurer of Jack should be dismissed for the reasons previously stated.

### A. Whether Jack Adequately Alleged A Violation Under La. R.S. 22:1892(B)(5)

GEICO General asserts that Jack's allegations are insufficient under *Iqbal* and *Twombly* to demonstrate that CCC Valuescope does not comply with La. R.S. 22:1892(B)(5) because it is not a "fair market value survey."  Jack alleges that GEICO General breached its contractual obligations under Jack's Policy through its use of the CCC Valuescope "to intentionally undervalue total loss vehicles through the use of obscure 'adjustments' which systematically reduce values derived from comparables." *R. 20, ¶ 18.*

As provided in the foregoing, La. R.S. 22:1892(b)(5)(b) requires insurers who adjust "first party motor vehicle total losses on the basis of actual cash value or replacement" to use a "generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are

9

provided to the first-party claimant, or a guidebook that is available to the general public." La. R.S. 22:1892(B)(5)(b).  Jack alleges that under the collision provisions of his Policy, GEICO General was obligated to pay for the "loss" of his vehicle, and that he "intended and Louisiana statutory law demands that the 'loss' be considered the fair market retail value of the vehicle."  *R. 67, ¶¶ 22, 23.*  Although Jack submitted claims to GEICO General for the "loss" of his vehicle, he alleges that GEICO General paid only a portion of the "loss" and refused to negotiate with him on the difference. He alleges that these actions by GEICO General constitute a breach of his insurance contract.  *Id. at ¶¶ 24–27.*

In addition to alleging that GEICO General breached its contractual obligations under the Policy through the use of the CCC Valuescope, Jack also alleges that the use of the CCC Valuescope violates Louisiana statutory law, La. R.S. 1892(B)(5)(b), because it "is not a 'generally recognized used motor vehicle industry source' within the intendment of [the statute]."  *Id. at ¶ 31.*  Jack further alleges that the CCC Valuescope is not a "fair market value survey" as authorized under La. R.S. 22:1892(5)(a) because it is marketed exclusively to insurance companies as "a tool employed for the specific purpose of undervaluing claims and thereby cheating its policy holders."  *Id. at ¶ 32.*

Under Louisiana law, policy provisions which conflict with statutes or public

policy are unenforceable. "If a conflict exists between the policy provisions and statutory requirements, the latter will prevail." *See Trevino v. Prudential Ins. Co.*, 504 So.2d 1179, 1181–82 (La. App. 3rd Cir. 1987). Jack alleges that the NADA and Kelly Blue Book are "the widely accepted valuation tools" and that the CCC Valuescope Reports are neither "fair market value survey" nor a "generally recognized used motor vehicle industry source" as required under La. R.S. 22:1893(B)(5).

Accepting all well-pleaded facts as true, including the allegations cited above, viewing them in the light most favorable to Jack, the Court finds that the allegations made against GEICO General meet the plausibility standard in *Twombly* in that the Complaint on is face contains enough factual matter to raise a reasonable hope or expectation that discovery will reveal evidence of each element of Jack's claim for a violation of La. R.S. 22:1892(B)(5), and also for breach of contract. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

*B. Jack's Claims under La. R.S. 22:1973(A)*

Jack also alleges that GEICO General violated its duty to adjust claims promptly and fairly, pursuant to La. R.S. 22:1973(A). He alleges that GEICO General's refusal to timely pay the difference between the value determined by GEICO General utilizing the CCC Valuescope and the vehicle value determined by

Jack utilizing the NADA or Kelly Blue Book was arbitrary and capricious. Jack requests penalties and attorney's fees pursuant to section (B)(5) in that more than 60 days have passed since he submitted satisfactory proof of loss to GEICO but to date, they have not paid the full amount due under the terms of their policies.

> La. R.S. 22:1973 provides:
>
> (A) An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> * * *
>
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure it arbitrary, capricious, or without probable cause."

La. R.S. § 22:1973(A), (B)(5).  "La. R.S. § 22:1973 imposes an additional duty of good faith and fair dealing on insurers, this duty does not exist 'separate and apart' from an insurer's contractual obligations. The duty of good faith is intimately related to [the insurer's] contractual obligations, as the statute essentially imposes a duty on the insurer to perform its contractual obligations in good faith. In the absence of a contractual duty, the duty of good faith simply does not exist."  *Arceneaux v. State Farm Fire & Cas. Co.*,  2009 WL 959948, 3 (E.D.La.,2009).

12

As Jack has plead a viable breach of contract claim, he has a viable claim for statutory penalties and attorney's fees.  In particular, Jack has alleged claims under sections (A) and (B)(5) for GEICO General's alleged arbitrary and capricious refusal to timely pay the difference between the vehicle value determined by GEICO General utilizing the CCC Valuescope and the value determined by Jack utilizing the NADA or Kelly Blue Book.

*C. Whether Jack's Claim Under La. R.S. 22:1973(B)(5) Has Prescribed*

GEICO General further contends that Jack's bad faith claim under 22:1973 has prescribed because Jack filed this action against GEICO General on October 13, 2017, more than one year from the date of his March 4, 2014 loss.  GEICO General argues that the one-year prescriptive period of tort claims, La. C.C. art. 3492, applies to this claim.  Jack responds that the ten-year prescriptive period for contractual claims set forth in La. C.C. art. 3499 applies to his claims.[4]

GEICO General speculates that Jack will likely argue that his Second Amended Petition relates back to the date he actually filed his claim on March 4, 2016, which is within the one year prescriptive period. GEICO General contends that Jack's Second Amended Petition does not relate back because he named the wrong

---

[4] Alternatively, Jack argues in the event the Court finds the one-year prescriptive period applies, the jurisprudential doctrine of *contra non valentem* prevents the running of prescription in this case. The Court need not address this argument.

defendant—GEICO Casualty— rather than GEICO General, his actual insurer, and he did not amend his Petition to correctly name GEICO General until October 17, 2017. The Court is not convinced that any relation-back defense by Jack would be denied based on the record of this action. The record reveals that GEICO Casualty answered the First Amended Petition which named it as Jack's insurer and defended this action for over two years; that GEICO General failed to notify Plaintiffs that it was the proper GEICO entity until June 26, 2017; and that GEICO General objected to Plaintiffs properly naming it in the Second Amended Complaint on July 17, 2017. The Court, however, need not address GEICO General's relation-back argument as the Court agrees that Jack's claim is governed by Louisiana's ten-year prescriptive period.

"The longstanding jurisprudentially established duty" announced in *Wooten v. Cent. Mut. Ins. Co.*, 166 So.2d 747 (La.Ct.App.1964) was "that a claim by an insured may sound in either tort or contract, which would determine not only the appropriate venue for suit but also the applicable prescriptive period. The Louisiana Supreme Court has not only recognized this jurisprudential duty since the late 1960s, but also has recognized that the duty was ultimately incorporated into La. R.S. § 22:1973." *Belanger v. Geico General Ins. Co.*, 623 Fed.Appx. 684, 691 (5th Cir. 2015) (citing *Richard v. S. Farm Bureau Cas. Ins. Co.*, 254 La. 429, 437–438, 223 So.2d 858, 861

(1969) (citing *Wooten* ); *Holtzclaw v. Falco, Inc.*, 355 So.2d 1279, 1280 (La.1977)

(citing *Richard*); *Theriot v. Midland Risk Ins. Co.*, 95–2895 (La.1997), 694 So.2d

184, 187 (citing *Holtzclaw*); *Kelly v. State Farm Fire & Cas. Co.*, 169 So.3d 328

(La.2015) (citing *Theriot*).

The *Belanger* court recognized "that bad faith claims asserted by third parties

(i.e., non-insureds) against insurance companies under La.Rev.Stat. § 22:1973 are

subject to the one-year prescriptive period for delictual actions under *Zidan v. USAA

Property & Cas. Ins. Co.*, 622 So.2d 265, 266 (La.Ct.App.1993), which specifically

addressed such third party claims. With respect to bad faith claims by an insured (or

her assignee), however, it appears no Louisiana state court has ever specifically

addressed the applicable prescriptive period." *Belanger* at 690. The *Belanger* court

further recognized that "[t]he Eastern District of Louisiana has applied the one-year

prescriptive period from *Zidan* to claims by an insured in multiple cases, but the

Western District of Louisiana, in *Aspen Specialty Ins. Co. v. Technical Indus., Inc.*,

No. 6:12–CV–02315, 2015 WL 339598 (W.D.La. Jan. 22, 2015) (Hanna, Magistrate

Judge, sitting by consent), recently concluded that the prescriptive period for

first-party claims is ten years." *Id.*[5]

---

[5] The *Belanger* court found it was not appropriate to make a determination as to whether
a claim by an insured was one or ten years because the plaintiff in that case waived his argument
that his claim was subject to a 10-year prescriptive period. *Id.* at 691.

In *Aspen*, Judge Hanna identified a fundamental distinction between a claim by a third party and a claim by an insured:

> "The proper prescriptive period to be applied in any action depends upon the nature of the cause of action." It is logical that the claim by a third-party to an insurance contract against an insurer would be classified as a tort and subject to the one-year prescriptive period for delictual actions, but it is not logical that a first-party claim, that is, a claim by an insured against its insurer, would be classified as a delictual claim. A first-party claim arises out of the relationship created by the insurance contract and, therefore, is either contractual or quasi-contractual in nature. Indeed, Section 1973 "recognizes the jurisprudentially established duty of good faith and fair dealing owed to the insured, which is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer." Both contractual and quasi-contractual claims are classified, under Louisiana law, as personal actions subject to a liberative prescription of ten years.

*Id.* The Court agrees with Judge Hanna's reasoning in *Aspen* and applies it to this action finding that Jack's claim under La. R.S. § 22:1973 is not prescribed.

### D. Whether Jack Failed To Plead Fraud With Particularity

GEICO General contends that Jack does not identify what statement was made to him, which representative of GEICO General made the statement to him, when or where the statement was made, or why the statement was fraudulent. GEICO General further contends that Jack failed to allege that he relied on a false statement. GEICO General argues that Jack only alleges that GEICO General paid a total loss claim using CCC, and that the amount was too low—which is not sufficient under the

16

Federal Rules.

Federal Rule of Civil Procedure 9(b) requires the plaintiff to "state with particularity the circumstances constituting the fraud." *Shandong Yinguang Chemical Industries Joint Stock Co., Ltd v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) quoting Fed.R.Civ.P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case...." *Benchmark Electronics, Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." Shandong, 607 F.3d at 1032 citing Benchmark Electronics, 343 F.3d at 724.

Jack alleges that GEICO General misleads its policyholders into believing that it will pay the full amount of any "loss" to a "totaled" insured vehicle, and then employs the CCC to intentionally undervalue the insured's "loss" to cheat the insured out of receiving the full amount due on his claim. Jack alleges that GEICO General was acting contrary to the terms of its policy in valuing the claims of its policyholders, and was intentionally undervaluing the amount due to its insureds. Taking Jack's allegations as true, which the Court must do, the Court must draw the reasonable inference that GEICO General  is liable for fraud and, hence, that Jack's claim is plausible on its face. Jack's pleadings meet the threshold pleading requirements to state a cause of action for fraud.

Finally, the heightened pleading requirements of Rule 9(b) are satisfied. Jack alleges that GEICO General (who) deliberately intended to undervalue total loss vehicles (what) in the claims handling process (when), in the State of Louisiana (where), by use of the CCC Value Scope Value Report which is not "a generally recognized used motor vehicle industry source" as required by Louisiana statutory law which GEICO General knew would produce values less than the legally required actual vehicle values (how). Based on these allegations, the Court finds that Jack has adequately plead, "the who, what, when, where, and how" of the fraud alleged.[6]

### E. Whether Appraisal Should Be Compelled

GEICO General represents and Jack does not dispute that the Policy contains an appraisal provision that states:

> If we and the insured do not agree on the amount of loss, either may, within 60 days after proof of loss is filed, demand an appraisal of the loss. In that event, we and the insured will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the actual cash value and the

---

[6] While not relevant in this proceeding, the Court notes that *Slade v. Progressive Security Insurance Company*, 856 F.3d 408 (5th Cir., 2017), *supra,* is a case factually similar to this action. Recently, on appeal from the district court's class certification, the Fifth Circuit held that under Louisiana law, the *Slade* plaintiffs' fraud claim was not subject to class certification because, "a fraud class action cannot be certified when individual reliance will be an issue." *Slade* at 415. While the court recognized there are some cases where a plaintiff's reliance theory is capable of class-wide resolution, "[*Slade*] is not one of them." *Id.*

> amount of the loss.  If they fail to agree, they will submit the dispute to the umpire.  An award in writing of any two will determine the amount of loss.  We and the insured will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire. We will not waive our rights by any of our acts relating to appraisal.

*R. 69* at p. 8. GEICO General contends that appraisal could reveal that "Jack was not underpaid, resolving his claims, leaving Mr. Jack with neither a concrete and particularized injury-in-fact nor a remedy under the law." *R. 76.* It asserts that Jack should be compelled to comply with the appraisal provision.

As provided above, the appraisal provision states that either party "may, within 60 days after proof of loss is filed, demand an appraisal of the loss. . . "  In contract construction, the word "may" is generally permissive. *Pierce Foundations, Inc. v. Jaroy Const., Inc*., 190 So.3d 298, 305 (La., 2016); *Iberiabank v. Broussard*, 2016 WL 5794545, at *4, f.n. 9 (W.D.La., 2016).  There is nothing that suggests that this provision was intended as anything other than a voluntary process—essentially an alternative dispute resolution mechanism. The closing phrase of the provision, "We will not waive our rights by any of our acts relating to appraisal," further supports the contingent, non-binding nature of this provision.

As to GEICO General's contention that the appraisal process could resolve Jack's claims in this lawsuit, the Court disagrees. Here, Jack claims that GEICO General's use of the CCC Valuescope system ("System") violates Louisiana law. He

alleges that GEICO General's System used to appraise their insured's total loss vehicles "intentionally undervalues the loss," and therefore breaches its contractual obligations to its insureds. *R. 67, ¶ 28.* The Court disagrees that compelling appraisal will resolve Jack's claims in this lawsuit.

## *V. Conclusion*

For the reasons set out above, the undersigned recommends that the Court *DENY* the Motion To Dismiss Elvin Jack's Second Supplemental And Amending Petition For Damages Or, Alternatively, Motion To Compel Appraisal filed by Defendant, GEICO General Insurance Company [Rec. Doc. 69].

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th  Cir.1996).

       **THUS DONE AND SIGNED** this 9th day of February, 2018 at Lafayette,

Louisiana.

 

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**