UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Prudhomme et al                      Civil Action No. 15-CV-00098

Versus                                    Judge Terry A Doughty

Geico Insurance Co et al                Magistrate Judge Carol B Whitehurst

## MEMORANDUM ORDER

Before the Court is Plaintiffs' Motion To Compel Discovery [Rec. Doc. 99] fled by Plaintiffs, Eric Prudhomme and Elvin Jack, individually and on behalf of others similarly situated. Defendants, Government Employees Insurance Company and GEICO General Insurance Company (collectively "GEICO"), have filed a Memorandum in Opposition to Plaintiffs' Motion. [Rec. Doc. 113].

Plaintiffs filed this Motion To Compel contending that Plaintiffs' attempts to obtain discoverable information have been "thwarted" by GEICO. They seek an order compelling GElCO "to produce documents responsive to Plaintiffs' Requests for Production, to produce corporate representatives who are knowledgeable about the topics they have been designated to testify and to produce deponents who are not unreasonably evasive and uncooperative during depositions." *R. 99.*[1]

---

[1] In its Opposition, GEICO initially argues that Plaintiffs' Motion is untimely and that Plaintiffs failed to exercise due diligence. *R. 113, pp.1 – 6.* The Court has addressed these contentions issuing an order allowing Plaintiffs an extension of the scheduling order deadlines. *R. 137.* Accordingly, these contentions are moot.

Plaintiffs' Motion provides the following:

**1. GEICO's 30(b)(6) WITNESS**

Plaintiffs contend that Troy Don Penry was designated by GEICO as their 30(b)(6) corporate representative to testify on the following topic requested by Plaintiffs 30(b)(6) deposition Notice:

3. The process by which you identified the need for the CCC Valuescope system and the process by which the CCC Valuescope system was ultimately used;

4. Your communications with any employee, agent, or representative of CCC Valuescope regarding your use of the CCC Valuescope system prior to its implementation by you and the factors relating to your decisions to use the CCC Valuescope system.

5. The definition of the type of system that the CCC Valuescope system is, and how it reaches its values *(e.g.,* a used motor vehicle industry source, a comparable vehicle search or a combination of both).

…

7. Comments and feedback given to CCC Valuescope by GEICO GENERAL INSURANCE COMPANY and GOVERNMENT EMPLOYEES INSURANCE COMPANY on the product before, during, or after its purchase and implementation at GEICO GENERAL INSURANCE COMPANY and GOVERNMENT EMPLOYEES INSURANCE COMPANY.

*R. 99, Exh. A.*

Plaintiffs state that when asked about Topics 3 and 5, specifics as to the CCC Valuescope system, Penry indicated he had no knowledge of the topic and could not speak as to it. *R. 99-2 , Depo. Of Penry, 20:21-23, 22:5-23:8, 33:15-34:16, 46:2-*

*47-4, 47:5-1.* As to Topics 4 and 7, Plaintiffs represent that Penry stated that he wasn't with the company when the decision to use Valuescope was made and he was not part of such conversations. *Id. at 34:24-35.4.* Specifically as to Topic 7 Penry stated he could not say with any certainty whether GEICO provided any comments or feedback on the CCC valuation product to CCC. *Id at 41:22-42:16, 43:12-16, 44:12-17.* Thus, Plaintiffs contend, GEICO produced a 30(b)(6) witness to testify as to the corporation's knowledge who was not given any of that knowledge or adequately prepared in any way to testify on behalf of GEICO. Plaintiffs move the Court to compel GEICO to produce an adequately-prepared 30(b)(6) designee, at GEICO's cost, for a repeated deposition.

In GEICO's opposition to the motion, it contends that Plaintiffs' requests outlined above seek information related to GEICO's initial purchase and implementation of CCC's valuation product. As testified by Penry, "GEICO believes the process started sometime during the 1990's." Generally, GEICO states that its initial implementation of CCC's product for valuing total loss vehicles occurred more than 20 years ago. It further states that Plaintiffs' claim is that GEICO's use of the CCC product violated LSA-R.S. 22:1892B(5) and that statute was not enacted until June 2010, at least ten years after GEICO began using the CCC product. 2010 La. Sess. Law. Serv. Act 1032 (H.B. 1011).

GEICO further contends because it does not centrally or uniformly store documents from before 2003, there is no easy way to determine what, if anything exists from before 2003, where it is located, or how to restore it to a usable format. Post-2003 data is stored on Magnetic Data Tapes held by third-party vendors. The tapes capture a snapshot of data at a specific point in time, and include data from thousands of employees. Meaning, a tape from April 18, 2005 would capture a snapshot of the data for thousands of employees as it existed on April 18, 2005. In its explanation to the Court, GEICO describes the arduous and time consuming process of restoring the data on each tape. *R. 113-1, p. 9.*

GEICO objects to Plaintiffs' motion to compel another 30(b)(6) deposition as irrelevant because the "yet-to-be-enacted-for-at-least-a-decade statute" "was not... nor could not" have been a factor in the decision of why GEICO chose the product. GEICO further objects contending that the age of the data and information requested in the 30(b)(6) deposition, post-2003, would be difficult to locate and access, and at best reveal marginally relevant information. GEICO argues that any production of such data is far outweighed by the substantial burden the process would place on GEICO.

GEICO also contends that Penry's affidavit related to his employment history with GEICO and knowledge of the CCC products, provides proof that Penry gave Plaintiffs "the best possible chance to obtain the information covered by the Notice." *R. 113-15*. GEICO confirms Penry's testimony as to his preparation for the deposition and states that he spent "at least fifteen hours over five days reviewing relevant documents and meeting with counsel." GEICO contends that Penry knew that he did not have additional information available "without a substantial and burdensome search." As to Topic 7 specifically, GEICO cites Penry's testimony which it contends provides that Penry states he would have known of discussions with CCC, but he was not aware of discussions with CCC about the product. *R. 133-13 at 40:13 – 45:15, 51:13-21, 66:14-67:24*. As to Topic 5, GEICO states that Penry correctly responded to Plaintiffs' questioning by stating that he could not speak to the specifics in Topic 5 because he does not have the confidential, proprietary information about the CCC product. GEICO states that in its February 12, 2016 Responses to Plaintiffs Interrogatories it responded, "GEICO does not know the actual calculations, algorithms and/or formulas that CCC uses in determining value, as those are CCC's proprietary software." *R. 133-7, Response to Interrog. 8 and 9*. It contends that Plaintiffs served a subpoena duces tecum and a notice of 30(b)(6)

deposition on CCC two weeks before Penry's deposition. *R. 99-16. R. 113-1, p. 7.*

Federal Rule of Civil Procedure 30(b)(6) governs the issuance of subpoenas to "a public, or private corporation, a partnership, an association, a governmental agency, or other entity." Fed.R.Civ.P. 30(b)(6). The named entity must designate one or more persons to testify on its behalf. *Id.* The designated person(s) "must testify about information known or reasonably available to the organization." *Id.* Rule 36(b)(6) "allows parties to obtain testimony from [an entity], provided the party describes with reasonable particularity the mattes for examination." *Mike Hooks Dredging Co., Inc., v. Eckstein Marine Service, Inc.,* 2011 WL 2599821 at *1 (E.D. La June 28, 2011).

As the Fifth Circuit has explained:

> the deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters. [T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*Brazos River Auth. v. GE Ionics, Inc*., 469 F.3d 416, 432–33 (5th Cir. 2006). That obligation, however, does not require a party to "make extreme efforts to

6

obtain all information possibly relevant to the requests." *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 219857, at *1 (N.D. Cal. Jan. 29, 2007).

"The mere fact that an organization no longer employs a person with knowledge on the specified topics does not relieve the organization of the duty to prepare and produce an appropriate designee." A corporation in this scenario has an obligation to prepare an individual by having him or her review available materials or talk to others with knowledge. A corporation, therefore, must "create an appropriate witness" from information available. *Aldridge v. Lake County Sheriff's Office*, 2012 WL 3023340, at *2 (N.D.Ill.,2012) "'If a corporation genuinely cannot provide an appropriate designee because it does not have the information, cannot reasonably obtain it from other sources and still lacks sufficient knowledge after reviewing all available information, then its obligations under the Rule cease." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012)); *Cuervo v. Airport Services, Inc.*, 2014 WL 12802522, *4 (S.D. Fla. Mar. 4, 2014); *Aldridge v. Lake County Sheriff's Office*, 2012 WL 3023340, at *2 (N.D.Ill.,2012).

In *Barron v. Caterpillar, Inc.*, the court denied the plaintiff's motion to compel the defendant to produce an additional designee to testify as to the design of a machine twenty-five years before the litigation. 168 F.R.D. 175, 177

(E.D.Pa.,1996). The court held that the defendant provided the plaintiff "with their best chance of obtaining any information" concerning the machine by designating the employee most likely to possess responsive information and requiring the defendant to produce an additional corporate designee was "an inappropriate remedy to cure the discovery problems presented in this case." *Id*.

The Court has no way of knowing to what extent Defendants could, or could not, prepare an appropriate designee on the reasons for using a system that was implemented over twenty years earlier. Penry has testified and GEICO represents, however, that some due diligence in obtaining answers to Plaintiffs' requests was done. Based on the transcript of Penry's testimony, the Court cannot say that Penry was not Plaintiffs' "best chance" of obtaining the data and information. The Court will not compel GEICO to provide another corporate designee.

2. **GEICO's Adjuster**

Plaintiffs deposed GEICO damage adjuster, Jeremy Louviere. They contend that during his deposition Louviere was evasive and non-responsive throughout the deposition. As examples they state that when asked about whether he was trained to use CCC during GEICO's three-month long training program, Louviere initially testified he couldn't remember, then stated he was

trained but could not remember any details. *R. 99-2, Depo. Of Louviere, 12:21, 13:8-9, 14:21-25, 15:16-16:19.* Louviere also initially testified that he didn't know whether or not he had done more than ten total losses during the seven years he was an adjuster. *Id at 30:5-32:6.* After a brief break Plaintiffs represent he "corrected the record" and stated he had seen more than a hundred total loss claims in his career. *Id.at 32:21-24.* After 40 minutes of this alleged behavior Plaintiffs contend they adjourned the deposition.

In its opposition GEICO contends that "Louviere was not being evasive but instead did not understand the terminology used by counsel." They further contend that that Louviere's inability to recall specifics from seven years before his deposition is not evasiveness.

The Court finds Louviere's responses regarding the number of total loss claims he has adjusted during his career with GEICO to be most telling of the characterization of his level of cooperation in the deposition. Based on his deposition testimony, the Court finds Louviere was evasive and uncooperative. The Court will allow Plaintiffs to retake Louviere's deposition.

## 3. GEICO'S PRODUCTION RESPONSES

a. **Production No. 12 – Plaintiffs requested GEICO documents "which detail the accuracy and/or cost saving benefits of CCC Valuescope Value Report valuation system as compared to NADA, Kelley Blue Book, or any other vehicle valuation program or system."** *R. 99-3, p. 18*.

In its Response, GEICO objected to this Request as "vague and ambiguous and may improperly label a product" and "overbroad, unduly burdensome and seeks documents that are not relevant to Plaintiffs' claims." GEICO also objected that such documents were "confidential, proprietary, and/or competitively sensitive information," GEICO stated that the documents were "not relevant to Plaintiffs' claims because the issue in this suit is if Plaintiffs' claims were underpaid not if one valuation system was more accurate or saved money as opposed to another system." *Id.* Ultimately, it stated that it is not aware of any documents it has that are responsive to this Request. *Id. at 18-19*. In its opposition GEICO repeats this statement. *R. 113-1*.

b. **Production No. 14[2] – Plaintiffs requested documents "which discuss/ address whether CCC Valuescope Value Report valuation system complies with Louisiana law."** *R. 99-3, p. 20.*

In its Response, GEICO again objected as "vague and ambiguous and may improperly label a product" and "overbroad, unduly burdensome as it was not

---

[2] Plaintiffs excluded Production No. 13 from this Motion because GEICO responded that they have no documents responsive to that request.

limited to the Louisiana law at issue ... nor ... to the time period of Plaintiffs' claim." *Id. at 20-21*. GEICO further objected that such documents were "confidential, proprietary, and/or competitively sensitive information" because the Request called for the disclosure of documents "protected by the attorney-client privilege, work product privilege, or any other applicable privilege." *Id.* GEICO stated it was not searching for responsive documents and that it "does not have information at this time to determine if any documents are withheld on the basis of this objection.*" Id. at p. 21*. Finally, GEICO stated that Plaintiffs' requested documents and/or information were "created or obtained after the filing of the Initial Complaint.... [which] are therefore privileged and will not be produced nor a privilege log created" for such documents. GEICO then referred Plaintiffs to "documents previously produced pursuant to the Protective Order entered in this case with Government Employees' RFP Responses. GEICO-PRUDHOMME000734-740." *Id.*

In its opposition to the motion GEICO further objects to the request to the extent it requests internal evaluation of state legal requirements (GEICO's counsel's opinion) as protected by the attorney-client privilege. *R. 113-1.*

c. **Production No. 15 – Plaintiffs requested "documents, data and/or analyses" provided by GEICO to CCC detailing their intended uses of the CCC valuation product.** *Id. at p. 21*.

In its Response, GEICO again objected as "vague and ambiguous and may improperly label a product" and "overbroad, unduly burdensome as it is not limited to the Plaintiffs' claims, the timeframe of Plaintiffs' insurance claims," any class period nor to the use of CCC Valuescope Value Reports related to the total loss claims. *Id. at 21-22*. Finally, it objected that such documents were "confidential, proprietary, and/or competitively sensitive information." *Id. at 21-22*.

d. **Production No. 16 – Plaintiffs requested every CCC valuation report generated for GEICO's Louisiana insureds, including the amount paid to each insured for each total loss claim.** *Id. p. 22*.

GEICO also objected to this request as 'vague and ambiguous" and seeking "confidential, proprietary and/or competitively sensitive information" in that it "seeks personal information of GEICO claimants and insureds." It again asserted the request was "overbroad, unduly burdensome" seeking documents not relevant because it was not limited to Plaintiffs' claims, the timeframe of claims, nor "to any potentially relevant class period." GEICO further objected that Plaintiffs' Request was compound in that it also asks for the "the amount paid to each insured to satisfy each individual total loss vehicle claim, which is not found in a CCC Valuescope Value Report." GEICO

contends that it evaluated and paid each total loss claim on a case-by-case basis based on a number of factors. GEICO stated that the Request is not proportional to the litigation for these reasons and it "is not searching for and is withholding documents." *Id. at p. 22-23*. GEICO refers Plaintiffs to "documents previously produced pursuant to the Protective Order entered in this case with Government Employees' RFP Responses.  GEICO-PRUDHOMME000734-740." *Id.*

In their motion, Plaintiffs state that they recognize these objections as "valid— to a point." They contend, however, "[i]f and when a class is certified," the information will be necessary for the identification of class members and the determination of the damages. They request that, *should a class be certified*, this Court compel the production of these documents.

e. **Production No. 17 – Plaintiffs request "all solicitation, promotion, and/or sales materials, electronic or otherwise, provided to [GEICO] by [CCC] prior to [GEICO]'s purchase and implementation of the CCC Valuescope Value Repot System. (This should include the CCC Valuescope Value Report Conditioning Guide, Projected Sold Adjustment defining document).** *Id. at 24.*

GEICO objected to this request as 'vague and ambiguous and may improperly label a product" and "overbroad, unduly burdensome as it is not relevant to the Plaintiffs' claims, limited to the timeframe of Plaintiffs' insurance claims," "any relevant class period," nor to the use of implementation of CCC

13

Valuescope Value Reports related to the total loss claims. Such documents would be from "more than ten years ago and possibly more than twenty years ago" and therefore not proportional to the litigation. *Id. at 24-25.* GEICO stated "it is not searching for and may be withholding documents on this basis. Finally it objected that the request sought "confidential, proprietary and/or competitively sensitive information" and was "vague and ambiguous" because "Conditioning Guide" and "Projected Sold Adjustment" were not defined and could not be discerned.

**f. Production No. 18 – Plaintiffs request documents provided to GEICO by CCC, prior to GEICO's implementation of the CCC system, that explain and/or demonstrate how the CCC valuation product works.** *Id. at 25.*

GEICO objected to this request stating most of the same objections to those in its response to Production No. 17. *Id. at 25-26.*

**g. The Check Writer Program**

Plaintiffs contend they learned the existence of the Check Writer Program during the deposition of GEICO's corporate representative, Daniel Stelly. Because Stelly lacked detailed information about the program Plaintiffs issued additional written discovery to obtain information about what data that program gathered and stored and whether the collection of information was retained in an insured's claim file. *R. 99-3, p. 32*. Plaintiffs state that the

information "is likely to shed important light on issues and evidence on this case like whether the Defendants have the NADA values of their insured's vehicles and whether the checks that are ultimately issued to insureds correlate with the CCC program being used to determine the value of those claims." *Id.*

GEICO objected to the terms "describe," "applications" and "CCC program" and the phrases "whether a vehicle meets or exceed seventy-five percent of the market value as determined by the current NADA Handbook" and "other information" as being "vague and ambiguous." *Id.* GEICO further objected that Plaintiffs' request was "overbroad, unduly burdensome and irrelevant" because it was not limited to the timeframe of Plaintiffs' claims, any relevant class period, nor to first party claims from Louisiana insureds. Finally it objected as seeking "confidential, proprietary and/or competitively sensitive information." *Id.*

As to Topic 12, GEICO states in its objections to Plaintiffs' Requests that it "is not aware of any documents it has that are responsive to this Request." Further, GEICO cites the deposition of David Antonacci, a GEICO Technical Supervisor for 20 years, who stated that he was not involved in any analysis which compared total loss values from CCC to any other valuation source, and would have been aware had they been conducted. 113-17 at 8:20–9:6, 18:19–19:5, 104:1–106:15. Plaintiffs' motion is denied as to Topic 12.

As to Topic 16, Plaintiff's motion states, "If and when a class is certified in this matter, the information contained in the CCC reports requested by the Plaintiffs here will be necessary for the identification of class members and the determination of the damages suffered by the class. This information is imminently relevant, and should a class be certified this Court should compel the production of the documents requested by Plaintiffs' Request No. 16." As this matter has not been certified as a class action, no response from GEICO is necessary at this time. Rule 34 requires the production of documents or ESI responsive to document requests that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Plaintiffs' motion is denied as to Topic 16.

GEICO objects to production of documents under Topics 14, 15, 17, and 18 as "confidential, proprietary, and/or competitively sensitive." In order to assert such privilege(s), the Court will require GEICO to prepare a privilege log that complies with the requirements of Federal and local rules, including FRCP Rule 26(b)(5)(A), and shall be narrowly tailored to specific documents or topics, as appropriate. GEICO shall identify whether individuals named on the privilege log are employed by GEICO and whether the individuals are attorneys. GEICO must also provide a brief description of the subject matter of each withheld document sufficient enough to access the claim of privilege. GEICO must also specifically identify the basis on

which the document has been withheld from production. The Court will order that GEICO produce a privilege log to plaintiffs.

GEICO objects to Topics 15, 17 and 18 as "not proportional to the litigation in that it seeks documents from when GEICO implemented CCC Valuescope Value Reports, which is more than ten years ago and possibly more than twenty years ago." Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P 26(b)(1). The Court finds that the data requested from GEICO involving implementation of the CCC Valuescope Value Reports which were created at least a decade before existence of the claims in this action exceed both the relevance and the proportionality components of the scope of permissible discovery.

Finally, as to the Check Writer Program which Plaintiff learned of in the Stelly deposition, the parties are to participate in a Rule 37 conference wherein the parties are to attempt to confer in good faith. The Court expects the parties to cooperate with each other using this ruling as guidance in order to resolve the issues in this request without intervention by the Court.

Accordingly,

**IT IS ORDERED** that the Motion To Compel [Rec. Doc. 99] filed by Plaintiffs is **GRANTED IN PART AND DENIED IN PART** as follows: (1) GEICO is to provide dates to Plaintiffs for the continuation of the deposition (not to exceed 2 hours) of Mr. Louviere within the next 30 days, (2) GEICO is to serve its privilege log on Plaintiffs, in compliance with this order, no later than November 8, 2019, (3) the parties are to confer in a Rule 37 conference regarding Plaintiffs' requests for production of the Check Writer System within 30 days. Plaintiffs' motion is denied with regard to Requests 15, 17 and 18 to the extent that those Requests seek the production of documents or data involving the implementation of the CCC Valuescope Value Reports which were created at least a decade before existence of the claims in this action.

**THUS DONE AND SIGNED** at Lafayette, Louisiana on this 10th day of October, 2019.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE