UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ERIC PRUDHOMME, ET AL. | CIVIL ACTION NO. 15-0098 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| GEICO INSURANCE CO., ET AL. | MAG. JUDGE PATRICK J. HANNA |

RULING

Pending here are two related motions:   Defendants Government Employees Insurance Company and GEICO General Insurance Company's (collectively "GEICO Defendants") Motion to Exclude the Opinions of Johnette Hassell ("Motion to Exclude") [Doc. No. 180] and Plaintiffs Eric Prudhomme and Elvin Jack's Amended Motion for Class Certification [Doc. No. 183].   Plaintiffs oppose the GEICO Defendants' Motion to Exclude, and GEICO opposes Plaintiffs' Amended Motion for Class Certification.

The Court has reviewed the parties' briefs, the exhibits, and all other evidence.    An evidentiary hearing was held on November 9-11, 2020, in the United States District Courthouse, Lafayette, Louisiana.

For the following reasons, GEICO Defendants' Motion to Exclude is DENIED. Plaintiffs' Amended Motion for Class Certification is DENIED.

I.    FINDINGS OF FACT AND PROCEDURAL HISTORY

This case involves the "valuation" that two GEICO entities, Government Employees Insurance Company and GEICO General Insurance Company, placed on vehicles determined to be total losses. Two insureds, Plaintiffs Eric Prudhomme ("Prudhomme") and Elvin Jack

("Jack"), contend that the GEICO Defendants undervalued their vehicles when they made claims for their respective total losses.

Prudhomme's 2008 Kia Rondo LX was involved in an automobile accident in Lafayette Parish. The Kia was so severely damaged that the estimates to repair the vehicle rendered it a total loss.   Prudhomme made a claim against the collision coverage of his automobile policy written by Government Employees Insurance Company.   NADA Valuation Reports for Prudhomme's vehicle estimated its clean retail value at $10,150.00.   The GEICO entity did not use NADA value, but instead used a product developed by a third party valuation service, the "CCC One Market Valuation Report," which set the "base vehicle value" for Prudhomme's vehicle at $8,272.00.

Jack's vehicle, a 2000 Ford Ranger V-6 Supercab truck garaged in Ville Platte, was severely damaged in an accident.   He filed a claim against the collision coverage of his automobile policy with GEICO General Insurance Company. The estimates to repair the vehicle rendered it a total loss.   NADA Valuation Reports for Jack's vehicle estimated its clean retail value as $4,350.00.   Also using the CCC One Market Valuation Report, the GEICO entity established the "base vehicle value" at $2,801.00 and deducted $43.00 for condition adjustment and $25.00 for prior damage, to arrive at an adjusted vehicle value of $2,733.00.

Plaintiffs allege that the GEICO Defendants' use of the CCC system violates Louisiana statutory law. Specifically, Plaintiffs allege that the GEICO Defendants' use of the CCC system violates La. Rev. Stat.  22:1892(B)(5), which provides:

> (5)  When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall

be derived by using one of the following:

(a)  A fair market value survey conducted using qualified retail automobile
dealers in the local market area as resources.   If there are no dealers in the local
market area, the nearest reasonable market can be used.

(b)  The retail cost as determined from a generally recognized used motor vehicle
industry source;  such as, an electronic database, if the valuation documents
generated by the database are provided to the first-party claimant, or a guidebook
that is available to the general public.   If the insured demonstrates, by presenting
two independent appraisals, based on measurable and discernable factors,
including the vehicle's preloss condition, that the vehicle would have a higher
cash value in the local market area than the value reflected in the source's
database or the guidebook, the local market value shall be used in determining the
actual cash value.

(c)  A qualified expert appraiser selected and agreed upon by the insured and
insurer.   The appraiser shall produce a written nonbinding appraisal establishing
the actual cash value of the vehicle's preloss condition.

(d)  For the purposes of this Paragraph, local market area shall mean a reasonable
distance surrounding the area where a motor vehicle is principally garaged, or the
usual location of the vehicle covered by the policy.

Plaintiffs argue that the GEICO Defendants' use of the CCC system does not meet the statutory

standard and systematically undervalues the claims of similarly situated policy holders.

During the class period, the GEICO Defendants (both entities) used two products from

CCC:   (1) one product was used to estimate the costs of repairs to insureds' damaged vehicles,

and (2) the second product was used to determine the amount GEICO would pay as the actual

cash value of the insured vehicle if there was a total loss. [Doc. No. 186-2, Exhibit 6, Deposition

of CCC through John Gintvainis, pp. 84-85; Exhibit 7, Deposition of Louiviere, p. 47;

Deposition of Simon, pp. 37-38].

After the GEICO Defendants were informed of a loss, an adjuster would visit the

damaged vehicle (if available) and input basic data, such as the VIN and mileage, into the CCC

One system.   The adjuster would inspect and take pictures of the damage. The adjuster would then input which damaged parts needed repair and replacement, and the estimating system determined the cost of repair.   When damage estimates reached a certain percentage of the NADA value, a trigger was met, and the adjuster was then informed to make the determination of actual cash value of the vehicle and whether the vehicle was a total loss under Louisiana law. Adjusters would consult a NADA guidebook (either online or through an app available to the public) to determine the NADA value of the insured vehicle.

Louisiana law requires NADA values to be used to determine whether a vehicle is a total loss.   La. Rev. Stat. 32:702(11).   If the cost of the repairs exceeded 75% of NADA "clean retail," the vehicle was deemed a total loss pursuant to Louisiana law.   The NADA value was sometimes saved in the GEICO Defendants' claim file system, but any available NADA value was always saved in the CCC system.

If a vehicle was deemed a total loss under Louisiana law, the GEICO Defendants did not use the NADA value for the vehicle, but used a different product from CCC, CCC One Market Valuation Report, to determine the amount it would pay an insured for her totaled vehicle. The CCC One Market Valuation Report is not available to the general public, but is used by insurance companies and collision repair shops that perform appraisals on behalf of insurance companies.   Governmental units also use the product to value fleets or determine the value of a particular vehicle.

The CCC One Market Value Report methodology is a "four step" process which includes the identification of the loss vehicle, "configuration" of the lost vehicle, search for and adjustment for comparables, and then a determination of the final amount.   The first step is for

the insurance carrier to identify the vehicle through either the VIN or, lacking the VIN, information directly from the insurance carrier, such as the year, make, model, trim, level, body style, and engine size of the loss vehicle and submit that information to CCC.

The second step is for CCC to configure the loss vehicle by looking at information from the insurer regarding equipment, packages, mileage, condition, and refurbishments of the loss vehicle. CCC will also load all standard equipment on the loss vehicle.

At the third step, the CCC product searches for comparable vehicles in various databases. That search is ███████████████████████████████████████ ██████████████████████████████████. (Before late 2015 or early 2016, ████ ██████████████████████). ██████████████████████████████████████ ████████████████████████.

The values of the comparables are "adjusted" for differences in configurations (package, trim, options) between the loss vehicles and the comparables. ██████████████████████ ████████████████████████. ████████████████████████████████████ ████████████████████████████████████ ████████████████ █████████████████████████████. Additionally, there is a mileage adjustment for vehicles ████████████████████████████████. Instead of taking an average of adjusted comparable values, CCC, for the GEICO Defendants, "weights" the comparables.   More "adjustments" occur after "weighting," based on a four-condition scale to judge the condition of the loss vehicle:   rough, average private, dealer, and exceptional. The GEICO Defendants conditioning is set that vehicles with average private condition do not have any dollar impact for conditioning. ████████████████████████████████████

████████.  This is a "monetary adjustment for the difference between a dealer-conditioned vehicle and one in the baseline or private owner-conditioned vehicle of the loss."

The fourth step is for the GEICO Defendants to reach a determination of the final amount to be paid to the insured.

However, as discussed more fully in analyzing the requirements of class certification below, testimony at the hearing and evidentiary submissions show that GEICO adjusters did not always use the CCC valuation to pay a total loss to customers.   Troy Penry, GEICO's Assistant Vice President of Auto Damage Claims, who has been employed by GEICO for more than 25 years and who himself worked as an adjuster in Louisiana, testified that "each claim is handled differently" and that there are "several subjective factors" to the valuation process.   Tr. (Penry) 551:1-5, 551:12-17, 558:24-25.   His testimony was consistent with that of Daniel Stelly, GEICO's field claims manager with responsibility over most of Louisiana, who testified that there is no exact form or process.   Tr. (Stelly) 25:24-26:9.   Instead, adjusters had discretion and actually exercised that discretion in a statistically significant number of cases to adjust the CCC valuation in paying a total loss amount to customers.

Plaintiffs seek to represent a claim composed of "All persons insured by GEICO General Insurance Company and Government Employees Insurance Company who have made a claim for first party total loss, which claim GEICO evaluated using CCC One Market Valuation, or a predecessor product, from August 15, 2010 to the present date [date of class action notice.]" [Doc. No. 183].   They further move that Prudhomme and Jack be appointed as class representatives.   *Id.*   They also seek to have Plaintiffs' counsel, J. R. Whaley; Kenneth D. St. Pé; Stephen B. Murray, Sr.; Stephen B. Murray, Jr.; Arthur M. Murray; and Kenneth W. DeJean

appointed as class counsel.   In support of their motion, Plaintiffs rely, in part, on the expert analysis of Dr. Johnette Hassell.

The GEICO Defendants oppose class certification.   They also move to exclude Dr. Hassell's testimony.

## II.   LAW AND ANALYSIS

### A.   Motion to Exclude

The Court deferred ruling on GEICO Defendants' Motion to Exclude until after the hearing.   However, prior to proceeding any further the Court must first address whether it may properly rely on the opinions expressed by Plaintiffs' expert, Dr. Hassell.

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.   When faced with expert scientific testimony, the court must determine at the outset if the proponent of the evidence has proven its admissibility by a preponderance of the evidence.   *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 n.10 (1993) (citing FED. R. EVID. 104(a) and *Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987)). Courts have considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial

judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, <u>522 U.S. 136, 138-9</u> (1997).

However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."   *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.*, <u>80 F.3d 1074, 1078</u> (5th Cir. 1996) (quoting *Daubert*, <u>509 U.S. at 596</u>).

In determining whether to allow expert opinion testimony, a court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education.   *See Moore v. Ashland Chemical, Inc.,* <u>126 F.3d 679, 684</u> (5th Cir. 1997).   A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* <u>163 F.3d 935</u> (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable.   Reliability and relevance, under Rule 702, are the hallmarks of admissible expert testimony.   *Daubert*, <u>509 U.S. at 589</u>; *In re MBS Mgmt. Servs., Inc.*, <u>690 F.3d 352, 357</u> (5th Cir. 2012).   In making its reliability determination, the court must assess whether the "reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M & S Petroleum, Inc.,* <u>174 F.3d 661, 668</u> (5th Cir. 1999).   However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, <u>509 U.S. at 595</u>.

Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."   Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], p. 702-18 (1988)).   In assessing relevance, courts "must determine whether that reasoning or methodology can be properly applied to the facts in issue."   *Id.* (citing *Daubert*, 509 U .S. at 592-93).

Ultimately, "[t]he district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

In this case, the GEICO Defendants do not challenge Hassell's general qualifications as an expert, but rather argues that "her opinions do not meet the standards required for admission, as set forth under Federal Rules of Evidence 104(b)[1], 401(a), 403, and 702, and the principles in *Daubert* . . . and its progeny." [Doc. No. 180].   The GEICO Defendants further contend that Dr. Hassell's opinions should be excluded "because they do not meet the standards set forth in *Chavez v. Plan Benefit Servs., Inc.,* 957 F.3d 542 (5th Cir. 2020)[,] and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)."   *Id.*

---

[1]Federal Rule of Evidence 104(b) provides:    "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."

The GEICO Defendants characterize their arguments as being based on the "false premises" relied upon by Plaintiffs.

First, the GEICO Defendants argue that Dr. Hassell's opinions are based on the false premise that NADA values are valid benchmarks of total loss vehicles' "actual cash values." They argue that, under Rule 104(b), the GEICO Defendants must show that NADA valuation is an "actual cash value" and, therefore, a valid benchmark, but they cannot because NADA value represents ███████████████████████████████████████████████████████ ██████.  [Doc. No. 185, Decl. of Jonathan Banks of J.D. Power's NADA Used Car Guide, March 28, 2019 ("Banks Decl."), attached as Ex. 1, ¶¶ 10, 14-16.].   Thus, they contend that this method of proof does not tend to prove that the amounts GEICO paid Plaintiffs (or putative class members) are less than the "actual cash value" due under their Policies.

Second, the GEICO Defendants argue that Hassell also relies on the false premise that CCC's values equate to the amount GEICO paid for a total loss vehicle's "actual cash value." While Dr. Hassell opines that she can collect CCC values to compare against NADA,   they argue that this is the wrong data.   The undisputed record evidence shows that the CCC value does not always equate to the amount GEICO paid for a total loss vehicle's "actual cash value." Dr. Hassell's opinions using CCC values do not tend to prove that the amounts GEICO paid Plaintiffs (or putative class members) are less than "actual cash value" due under the Policies. *See* Fed. R. Evid. 104(b), 401(a), and 702(a).

Third, the GEICO Defendants argue that a "single benchmark" comparison of CCC and NADA values shows what Plaintiffs must prove:   that the putative class members received less than "actual cash value."   The validity of this "single benchmark" comparison is also Plaintiffs'

10

burden to prove before the Court considers Dr. Hassell's opinions on class certification.   They contend that the undisputed record evidence shows that when Kelley Blue Book ("KBB") (another method Plaintiffs allege could be used) replaces NADA the results are materially inconsistent.   Many individuals identified as injured using NADA would be uninjured (and may even owe GEICO a refund) using KBB.   And, as Louisiana courts have long recognized, "[w]hether a NADA Guide or a Kelley Blue Book valuation is superior to another calculation is a question of fact that must be examined on a case-by-case basis."   *Clark v. McNabb*, 878 So.2d 677, 680-81 (La. Ct. App. 2004).   Therefore, they conclude that Dr. Hassell's opinions using NADA as a single benchmark do not tend to prove putative class members were injured,   even if it is found that GEICO's use of CCC did not comply with La. Rev. Stat. 22:1892.   *See* Fed. R. Evid. 104(b), 401(a).

Plaintiffs respond that the GEICO Defendants have failed to raise a proper attack under *Daubert* because Hassell's opinions in this case deal with very simple database functioning of which there is no serious dispute.   To the extent that GEICO's motion is based on objections to the factual foundation of Dr. Hassell's opinions, Plaintiffs argue that these are issues to address on cross examination, as credibility is to be determined by the trier of fact.   Finally, Plaintiffs argue that the GEICO Defendants challenge the weight to be given her opinions, not the exclusion of those opinions.

In reply, the GEICO Defendants then place their arguments in the framework of *Daubert*, contending that Hassell's opinions should be excluded.   They reiterate that her opinions are based on false premises.   They argue further her "methodology" had not even been implemented.

11

Having heard the evidence adduced at the hearing, further elucidating the parties' positions, the Court finds that Dr. Hassell's opinions are properly admitted.   The GEICO Defendants, as stated, do not challenge Dr. Hassell's qualifications or that she has testified as an expert in other cases.   Further, Dr. Hassell explained the technical methodology she used for valuing total losses.   Her analysis and testimony are admissible as offered.

The GEICO Defendants' real objection is that Dr. Hassell's comparison is incorrect and does not address all information that the GEICO Defendants rely upon in valuing total losses. That objection is addressed by the cross-examination of Dr. Hassell at her deposition and by presenting their own evidence and testimony at the class certification hearing.   The Motion to Exclude is DENIED.   The Court has considered Dr. Hassell's testimony in ruling on the Amended Motion for Class Certification.

**B.     Amended Motion for Class Certification**

The Court now turns to the class certification issue.   Applying <u>Federal Rules of Civil Procedure 23(a)</u> and (b)(3) factors, Plaintiffs argue that the Court should find, as its sister courts did in *Slade v. Progressive Security Insurance Co.*, No. 11-2164, <u>2014 WL 6484588</u> (W.D. La. Oct. 31, 2014), rev'd and remanded, <u>856 F.3d 408</u> (5th Cir. 2017), and *Gautreaux v. Louisiana Farm Bureau,* 2019-17 (La. App. 3rd Cir. 10/2/19), <u>280 So. 3d 694, 709</u>, writ denied 2019-01782 (La. 6/03/20), – So.3d –, that certification is appropriate.

The GEICO Defendants contend that Plaintiffs have failed to meet their burden on the Rule 23 requirements, and the Amended Motion for Class Certification must be denied.

> The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* <u>442 U.S. 682, 700</u>–701, <u>99 S.Ct. 2545</u>, <u>61 L.Ed.2d 176</u> (1979). To come within the exception, a party seeking to maintain a class action "must affirmatively

demonstrate his compliance" with Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. ——, ——, 131 S.Ct. 2541, 2551–2552, 180 L.Ed.2d 374 (2011).

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).   "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 564 U.S. at 349.   Rule 23(a) has four requirements:   numerosity, commonality, typicality, and adequate representation.   FED. R. CIV. P. 23(a); *see also Dukes,* 564 U.S. at 349.   If these perquisites are met, then a class may be certified if the moving party also meets the requirements of Rule 23(b)(1), (b)(2), or (b)(3) for class type.   Rule 23(b)(3), at issue in this case, provides that the Court must find

> that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

> The Fifth Circuit has instructed on the proper standard for certification under Rule 23:
>
> Certification is proper only where "the trial court is satisfied, after a rigorous analysis," . . .   that the Rule's requirements are met. Put another way, "a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Vizena v. Union Pac. R.R.*, 360 F.3d 496, 503 (5th Cir. 2004) (per curiam).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, <u>564 U.S. at 350</u>, <u>131 S.Ct. 2541</u>. Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact," and so on. *Id.*

As a result, in weighing certification, the court will often have "to probe behind the pleadings," *Falcon*, <u>457 U.S. at 160</u>, <u>102 S.Ct. 2364</u>, because "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues" of the case, *Dukes*, <u>564 U.S. at 351</u>, <u>131 S.Ct. 2541</u>. So the court should seek to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination[.]" *Flecha v. Medicredit, Inc.*, <u>946 F.3d 762, 766</u> (5th Cir. 2020). "If some of the determinations ... cannot be made without a look at the facts, then the judge must undertake that investigation." *Spano v. Boeing Co.*, <u>633 F.3d 574, 583</u> (7th Cir. 2011). The judge cannot merely "review a complaint and ask whether, taking the facts as the party seeking the class presents them, the case seems suitable for class treatment." *Id.* (emphasis added). Much more is needed.

Thus, to satisfy the rigor requirement, a district court must detail with specificity its reasons for certifying. *Vizena*, <u>360 F.3d at 503</u>. It must explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution. . . . The court should respond to the defendants' legitimate protests of individualized issues that could preclude class treatment. . . And its analysis must stay close to the facts and law of the case, spurning reliance on generalizations about what types of disputes may be fit for a class. . . . The court must rigorously consider both Rule 23(a)'s prerequisites . . . and the Rule 23(b) class type. . .

This "rigorous analysis" mandate is not some pointless exercise that we foist on this circuit's hardworking and conscientious district judges, such as the judge in this case. It matters. A "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Behrend*, <u>569 U.S. at 33</u>, <u>133 S.Ct. 1426</u> (quotation marks removed), and creative uses are perilous. It is no secret that certification "can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." . . . And the existence of a class fundamentally alters the rights of present and absent members, particularly for mandatory classes such as the one here. . . . No less than due process is implicated, so a careful look is necessary. *See Unger v. Amedisys Inc.*, <u>401 F.3d 316, 320</u> (5th Cir. 2005).

*Chavez v. Plan Benefit Servs., Inc.*, <u>957 F.3d 542, 545</u>–48 (5th Cir. 2020) (citations omitted).

Analysis of a class certification motion "begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).   Plaintiffs assert three claims:   a claim for breach of the insurance contract,   a claim for penalties under LA. REV. STAT. 22:1892(B)(1), and a claim for penalties under LA. REV. STAT. 22:1973(A) and (B)(5).   [Doc. No. 1-1 ¶¶ 21, 28, 30-35.].   "To state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision."   *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) (citing *Bergeron v. Pan Am. Assurance Co.*, 731 So.2d 1037, 1045 (La. App. 4th Cir. 1999).   Additionally, to recover damages under La. Rev. Stat. 22:1973 or La. Rev. Stat. 22:1892, the plaintiff must have a valid "underlying substantive claim."   *Pelle v. Munos*, 296 So.3d 14,24-25 (La. App. 1st Cir. 2/19/20) ("In order to recover under La. R.S. 22:1973 and La. R.S. 22:1892, a plaintiff must first have a valid, underlying, substantive claim upon which insurance coverage is based. . . . The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying insurance claim. . . . Furthermore, breach of contract is a condition precedent to recovery for the breach of duty of good faith . . . ).

The duty under GEICO's insurance agreement is to pay the actual cash value of the loss vehicle in its pre-loss condition.  Exh.  63,  Prudhomme  Insurance  Agreement,  11. This value includes adjustments for the "physical condition of the" loss vehicle and for "depreciation/betterment."   *Id.* at 17-18.   Thus, for the breach of contract claim, Plaintiffs must prove the settlement amount was less than the actual cash value of the loss vehicle, after all adjustments.

With the elements of these claims in mind, the Court will consider each of the four Rule 23(a) requirements, as well as the requirements of Rule 23(b)(3).

### 1. Numerosity

First, numerosity requires the examination of the specific facts of each case and imposes no absolute limitations.  *See Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 329 (1980).   There are no magic numbers.  *See Phillips v. Joint Legis. Committee on Performance and Expenditure Review of the State of Miss.*, 637 F.2d 1014, 1022 (5th Cir. 1981) ("Ample case law can be cited to show that smaller classes have been certified and larger ones denied certification for lack of numerosity. . . Such number comparisons miss the point of the Rule. The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.").

The interrogatories filed by the GEICO Defendants (Exhibit 55) show that from August 15, 2010-January 9, 2019, Government Employees Insurance Company adjusted 4,352 total losses for insureds whose policies were issued in Louisiana.   GEICO General Insurance Company adjusted 8,920 total loss claims for insureds whose policies were issued in Louisiana. In total, the GEICO Defendants adjusted 13,272 total claims.

The GEICO Defendants concede that the total claims are sufficiently numerous to meet the numerosity requirements.   However, the GEICO Defendants argue that Plaintiffs cannot prove that the number of insureds in the 13,272 claims that were allegedly harmed under Plaintiffs' theory of liability.   The GEICO Defendants presented testimony from Kathy Simon and David Stelly, both of whom testified that adjusters have discretion and did not always pay the CCC value, but actually pay a higher amount than the CCC value approximately ███ of

16

the time.   The GEICO Defendants also argue that that the number of claimants could only be determined on an individual claim-by-claim review since the GEICO Defendants do not track the number of claims in which they pay more than the CCC value.

However, even under the GEICO Defendants' argument ███████████████, there would still be a sufficient number of potential claims to meet the numerosity factor.   Therefore, the Court finds that Plaintiffs have met their burden as to numerosity.

### 2.  Commonality

The Court next turns to the factor of commonality.   Commonality allows a class to be maintained if there are questions of law or fact common to the class.   Fᴇᴅ. R. Cɪᴠ. P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997); *see also Slade*, 2014 WL 6484588, at *7 (quoting same).

Plaintiffs list five (5) issues which they believe are common to every class member:

- Whether GEICO's use of CCC violates Lᴀ. Rᴇᴠ. Sᴛᴀᴛ. 22:1892(B)(5);

- Whether CCC's algorithm driven comparable methodology is a "fair market value survey conducted using qualified retail automobile dealers in the local market area as resources" pursuant to Lᴀ. Rᴇᴠ. Sᴛᴀᴛ. 22:1892(B)(5)(a);

- Whether CCC's algorithm driven comparable methodology is a "generally recognized used motor vehicle industry source" pursuant to Lᴀ. Rᴇᴠ. Sᴛᴀᴛ. 1892(B)(5)(b);

- Whether the use of a system that violates Lᴀ. Rᴇᴠ. Sᴛᴀᴛ. 22:1892(B)(5) gives rise to penalties under Lᴀ. Rᴇᴠ. Sᴛᴀᴛ. 22:1973; and

17

- The criteria for individual class members' entitlement to damages and penalties under L<small>A</small>. R<small>EV</small>. S<small>TAT</small>. 22:1892 and L<small>A</small>. R<small>EV</small>. S<small>TAT</small>. 22:1973.

[Doc. No. 183-1, p. 18].   The first three issues all address the question of whether GEICO's use of the CCC value violates the provision of La. Rev. Stat. 22:1892(B)(5).   The fourth and fifth issues address whether each proposed claimant would be entitled to penalties and attorneys' fees under La. Rev. Stat. 22:1973 and La. Rev. Stat. 22:1892 in the even GEICO's use of the CCC values violates La. Rev. Stat. 22:1892(B)(5).

In *Slade v. Progressive*, 2014 WL 6484588 (W.D. La. Oct. 13, 2014), the District Court certified a very similar class action involving Progressive's use of the Work Center Total Loss ("WCTL") valuation system for total vehicle of Progressive insureds.   The District Court certified issues for the class involving the breach of the insurance contract, statutory penalties, and attorneys' fees under La. Rev. Stat. 22:1973 and fraud.   On appeal, the Fifth Circuit approved the class certification on those issues except for fraud.[2]   *See Slade v. Progressive*, 856 F.3d 408 (5th Cir. 2017).

*Slade* has many similarities to the present case.   It involved a class of Progressive insureds who had total losses calculated with the WCTL system that allegedly undervalued the insured's loss.   *Slade* was also similar to the present case in that the NADA clean-retail was used by the plaintiffs' expert, Hassell,[3] who testified that damages could be computed on a class-

---

[2]The Court held that fraud claims require individual proof of reliance by each claimant, and, therefore, certification was inappropriate.

[3]Hassell is the same expert in this case.

wide basis by computing the difference between the NADA lean rated value and the WCTL value by using Progressive's own information.[4]

However, there are some very important differences between *Slade* and the present case. Progressive used Manage Repair Representatives ("MRR"), who did not have discretion to deviate from the WCTL numerical value.   In contrast, GEICO's adjusters have extensive training which includes the discretion to settle total loss claims over the CCC value.   According to the testimony of Kathy Simon, ██████████████████████████████████ ████████████████.  Since Progressive always used the WCTL value, there was no need to look at each individual claim to see which claimants received more.   Dr. Hassell's damage model would fit more easily with the Progressive case than it would with GEICO's case.

Another important difference between *Slade* and the present case is that the Progressive adjusters were also able to determine the vehicle's NADA value by pressing an "NADA button" on his or her computer.   In contrast, the GEICO adjusters do not track the NADA clean retail value, and that information is not normally found in GEICO's claim files.

One other important difference is the value Progressive was computing versus the value GEICO is computing.   In *Slade*, the WCTL program had a condition rating of 3.00, which compared to the condition of a used vehicle on a dealer's lot.   In contrast, GEICO's CCC program attempts to calculate the actual cost value of the vehicle in the state where it was located just prior to the accident causing the loss.   Therefore, in *Slade,* the use of Dr. Hassell's model is an "apples versus apples" comparison (used vehicle on dealer's lot versus clean retain value). In the present case, her damages model is an "apples versus oranges" comparison because

---

[4]The Court notes that there is currently an issue in *Slade* as to whether the damages were as easy to calculate as Hassell had previously indicated.

NADA clean retain reflects the value of a used vehicle for sale on a dealer's lot versus the actual cost of the insured vehicle just before the accident.[5]   Dr. Richardson testified that a vehicle on the road just prior to an accident would almost always be valued less than a used vehicle for sale on a dealer's lot.

Since GEICO pays more than the CCC value in approximately ▇▇▇▇ of its claims, all 13, 272 potential claims would have to be looked at individually to determine whether or not the CCC value was paid.   Additionally, in approximately ▇▇▇ of cases where the CCC system is used, the system evaluations are reviewed by a person ▇▇▇ or the evaluations are prepared manually ▇▇▇ by CCC adjusters.   Each individual claim will have to be looked at to find out in which claims GEICO paid more and/or in which claims manual valuations were used by CCC. Unlike *Slade*, Prudhomme's and Jack's claims cannot be resolved by reference to GEICO's own computer data.

In *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542 (5th Cir. 2020), the Court found the district court failed to meet the rigorous analysis required for class certification.   Specifically, the Court held the district judge failed to examine the asserted differences among the class members that could prevent the suit from generating common answers.

There are important differences between the GEICO insureds proposed to be class plaintiffs.   Apparently, ▇▇▇▇ were paid more than the CCC.   Also, apparently ▇▇▇ had manual evaluations used, rather than the CCC computer system.   It would be impossible to determine damages on a class-wide basis without examining all 13,272 claims.   Common questions could not be answered without fact-specific inquiries as to each claim.

---

[5]NADA Clean Retail reflects a used vehicle on a dealer's lot ready for sale.   (Dr. Richardson's testimony).

In *Curtis v. Progressive*, 2020 WL 2461482 (W.D. Ok. May 15, 2020), the district court denied a very similar class certification primarily on the commonality factors.   The Court found the plaintiffs did not show commonality where it was alleged that Progressive's use of the WCTL system to value vehicle total loss claims violated Oklahoma law.   In denying class certification, the court found there would not be a common answer for the purported class, as the class would require an in-depth look at specific claims, which contravenes the purpose of class litigation.

In this case, there will be no common answer of whether GEICO violated La. Rev. Stat. 22:1893(B)(5) without looking at each claim.   Therefore, the Court finds that the commonality factor is not met.

### 3.  Typicality

Typicality is a requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3).   The test focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they wish to represent.   *See Lightbourn v. City of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).   If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.   *See James v. City of Dallas* 254 F.3d 551, 557 (5th Cir. 2001).

Prudhomme's 2008 Kia Rondo LX was involved in an automobile accident, resulting in a total loss.   Prudhomme maintains his vehicle's NADA clean retain value was $10,150.00, while he was only paid $8,272.00 under GEICO's CCC One valuation.

Jack's 2000 Ford Ranger V-6 Supercab truck was involved in an automobile accident, resulting in a total loss.   The NADA clean retail value was $4,350.00 while he was paid $2,733.00 under GEICO's CCC One valuation.   Jack believes his vehicle was worth even more than the NADA clean retail value.

GEICO maintains the plaintiffs are in conflict with each other, and Jack is subject to unique individual defenses.   Despite that, Prudhomme and Jack seek to represent GEICO insureds whose total loss vehicles were paid less than the NADA clean retail value.   The small differences are not enough to defeat typicality.

### 4.  Adequate Representation

Under the adequacy argument, Plaintiffs must show that they, their counsel, and the relationship between the two are adequate to protect the interests of the absent class members. *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

There is no argument challenging the adequacy of Plaintiffs' counsel.   Affidavits were filed [Exh. 59] by class counsel, Kenneth St. Pe, Kenneth DeJean, and J.R. Whaley.   Mr. DeJean testified live at trial.   Counsel are highly qualified to represent the interest of absent class members.

GEICO argues that Prudhomme and Jack have a conflict of interest due to Dr. Richardson's conclusion that more than one-fifth of the putative class benefited from GEICO using the CCC value instead of NADA Clean Retail value.   In other words, Prudhomme and Jack have a conflict of interest in that the method they contend should have been used would be to the detriment of more than 20% of the putative class.

22

Intraclass conflicts may negate adequacy under Rule 23(a)(4).   *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 315 (5th Cir. 2007).   In *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000), the plaintiff's representation was found to be inadequate where the class includes those "who claim harm from the very acts from which the other class members benefitted."   That is the case here.   According to Dr. Richardson's case study, approximately 21% of the proposed class members would receive less using the NADA Clean Retail value than they received by GEICO's CCC One Valuation.   This is a substantial conflict with over 1/5 of the class.   Due to this conflict of interest, Prudhomme and Jack are unable to provide adequate representation to the proposed class.

### 5.  Rule 23(b) Class Type Requirements

"A class action may be maintained if Rule 23(a) is satisfied[,] and if the plaintiffs prove that the action meets the requirements of one of the options under Rule 23(b).   In this, Plaintiffs contend that they have satisfied Rule 23(a) and that this is the type of action addressed in Rule 23(b)(3).

Rule 23(b)(3) requires that" questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   FED. R. CIV. P. 23(b)(3); *see also Madison v. Chalmette Refining, LLC*, 637 F.3d 551, 555 (5th Cir. 2011).  Rule 23(b)(3) then identifies four "pertinent" factors to consider:

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the
        claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Predominance, although reminiscent of the commonality requirement of Rule 23(a), is
more demanding "because it tests whether the proposed classes are sufficiently cohesive to
warrant adjudication by representation."   *Unger*, 401 F.3d at 320.

As discussed in the analysis of Rule 23(a), due to the very important differences between
the issues in this case and *Slade v. Progressive*, the commonality requirement was not met.
Under the more demanding standard of predominance, this requirement is not met either.   Since
██████████████ of the GEICO insureds were paid more than the CCC One Valuation
and/or manual evaluations were used in ████ of the cases, all 13,272 claims would have to be
examined, which defeats the purpose of a class action.   Dr. Hassell's damage formula cannot be
used for the entire class without examining each individual claim file.   Damages simply cannot
determined on a class-wide basis.

Also, without knowing the amount each potential GEICO claimant was paid over the
CCC One Valuation (which will require every file to be examined), it is also impossible to have
a common answer to the question of whether GEICO violated La. Rev. Stat. 22:1892(B)(5).

Although this case is similar to *Slade v. Progressive*, a "rigorous analysis" of the facts
show that there are vast differences which make it impossible to determine liability or damages
on a class-wide basis.   Therefore, Plaintiffs' Amended Motion for Class Certification is
DENIED.

**III.      CONCLUSION**

For the foregoing reasons, Defendants' Motion to Exclude [Doc. No. 180] is DENIED.

Plaintiffs' Amended Motion for Class Certification [Doc. No. 183] is DENIED.   As a result of

the Court's Ruling, it appears there is no longer subject-matter jurisdiction.   It is, therefore, the

intent of the Court to remand this matter to the Fifteenth Judicial District Court, Parish of

Lafayette, State of Louisiana.   Accordingly, any party opposing remand should file a

memorandum no later than fifteen (15) days from the date of this Order.

Monroe, Louisiana, this 22nd day of December, 2020.

                                              TERRY A. DOUGHTY
                                       UNITED STATES DISTRICT JUDGE